(C.D. 4366)

Rhodia, Inc. *v.* United States

United States Customs Court, First Division

(Decided July 20, 1972)

*Sharretts, Paley, Carter & Blauvelt* (*Louis Schneider* of counsel) for the plaintiff.

*Harlington Wood, Jr.,* Assistant Attorney General (*Herbert P. Larsen,* trial attorney), for the defendant.

Before Watson, Maletz, and Re, Judges

Watson, Judge: These protests, consolidated for the purpose of trial, place in issue the classification of importations, described on the invoices as "N. Methyl Glucamide" or "N. Methyl Glucamine", which were imported from the years 1964 through 1968.[1] The merchandise was classified as other nitrogenous compounds pursuant to the provisions of item 425.52 of the Tariff Schedules of the United States and assessed with duty at the rate of 3 cents per pound plus 15 per centum ad valorem if entered prior to January 1, 1968 and 2.7 cents per pound plus 13 per centum ad valorem if entered thereafter.

Plaintiff claims classification pursuant to item 425.20 of the TSUS providing for "mono-, di-, and tri-(methyl-, ethyl-, propyl,- and butyl)monoamines" dutiable at the rate of 10.5 per centum ad valorem if entered prior to January 1, 1968 and 9 per centum ad valorem if entered thereafter.

---

[1] In a number of protests, helpfully tabulated by defendant, the entries were liquidated less than 60 days after appraisal. In this regard we adhere to the decision in *John V. Carr & Son, Inc.* v. *United States,* 66 Cust. Ct. 316, C.D. 4209, 326 F. Supp. 973 (1971), in considering the liquidations valid and the protests based thereon timely. The protests involved are 67/19687, 66/54826, 67/4881, 67/17429, 67/27962, 67/57155, 67/77820, 67/89783, 67/89784, 67/89863, 67/9326, 68/13144, 68/26541, 68/38410, 68/41304, 68/47323, 68/51820, 68/54445, 69/7919, 69/8927 and 69/29312.

20

The relevant statutory provisions read as follows:

Schedule 4, Part 2, Subpart D, Headnote 1:

> 1. This subpart does not include any inorganic compounds. Organic compounds in this subpart are arranged according to functional group. Any organic compound which is described in more than one functional group is classifiable in the first group in which it is described.

Nitrogenous compounds:

\* \* \* \* \* \* \*

| | | |
|---|---|---|
| 425.20 | Mono-, di-, and tri-(methyl-, ethyl-, propyl-, and butyl)monoamines___ | 10.5% ad val.<br>9% ad val. |

\* \* \* \* \* \* \*

Other:

\* \* \* \* \* \* \*

| | | |
|---|---|---|
| 425.52 | Other _____ | 3¢ per lb. +<br>15% ad val.<br>2.7¢ per lb. +<br>13% ad val. |

The underlying determination that the merchandise is an organic nitrogenous compound covered by part 2 of schedule 4 of the Tariff Schedules of the United States and not provided for elsewhere has not been disputed. In addition, it is agreed that the chemical formula of the importation is $C_7H_{17}NO_5$ represented by the following structural diagram:

The parties have stipulated that the importation contains a functional amine group, five functional hydroxyl groups and a methyl radical.

The court has benefited considerably in this case from the expert testimony of the witnesses as well as the thorough presentation of the parties. As a result, we emerge with the following understanding concerning the importation. It is a nitrogenous organic compound produced by the reaction of glucose with methylamine and hydrogen in the presence of a catalyst. An oxygen atom of the glucose is replaced by the methylamine. This results in a new carbohydrate molecule containing three types of distinct or identifiable segments. One, marked by the Roman numeral I in the above illustration, is an amine, so called because it is considered a derivative of the inorganic compound ammonia ($NH_3$) ; in this case a "mono" amine as only one of the three hydrogen atoms of the ammonia molecule was replaced. One of the segments is a methyl radical, marked above by Roman numeral II. The segments marked by Roman numeral III are hydroxyl or alcohol groups.

The substance of the testimony as well as the agreed upon authorities can lead to no conclusion other than that monomethyl monoamines are a class of chemical compound possessing a single methyl radical and a single amine function. In the plural form, such a definition of the term monomethyl monoamines is inescapable.

Webster's New International Dictionary (1955) defines "monomethyl" as "a combining form denoting the *presence of one methyl group*", and "monoamine" as "[a]n amine containing only one amino group." The record abundantly supports the view that any chemical compound possessing the above requisite groups in the indicated number belong to the class of substances termed monomethyl monoamines.

The presence of additional radicals, hydroxyl in this instance, has no bearing unless their presence makes a competing provision more specific. For example, if we were faced with a competing provision for "amino alcohols" the presence of the hydroxyl radicals would have a great bearing on the issue. But as between a specific provision for monomethyl monoamines and a general provision for other nitrogenous compounds, the presence of hydroxyl radicals does not detract from the applicability of the former provision and does not enhance the applicability of the latter provision. *Cf. Aldrich Chemical Company, Inc.* v. *United States*, 65 Cust. Ct. 56, C.D. 4053 (1970).

The word "monoamines" is the central word of this provision. The preceding words are prefixes intended to define the scope of the central word by forming various possible combinations, such as "monomethyl monoamines". We believe the central or base word has been stated in the plural to indicate that all forms of the named substances are included. The use of the plural would not otherwise be necessary and would not be justifiable merely because of the multiplicity of prefixes. If the intention had been to describe only a limited number of

individually labeled substances, the use of the singular "monoamine" would have been more appropriate. This form of statutory shorthand would have given equal emphasis to the first prefix, the second prefix and the base word (monoamine) and in reading would yield a series of single identifiable substances. The use of the plural as a base word indicates a greater expansiveness and a broader coverage.

The tariff language shorthand used in this provision could hardly be subjected to extended analyses on the basis of conventional grammatic usage. It should suffice in the end that the plaintiff's method of reading this provision is one which retains the plural in the final form and therefore suggests all forms of the named substances.

Defendant, in seeking to limit the coverage of the claimed provision to a single compound, "methylamine", advances a number of additional arguments. One such argument seeks to show that since the entire class of "trimethyl monoamines" consists of only one compound, that is, trimethylamine, the claimed language of "monomethyl monoamines" should similarly be limited in its coverage to methylamine alone. However, the mere fact that one compound covered by this provision is limited to a single form and is incapable of expansion by various molecular substitutions does not mean that other classes named in the provision must be limited to single compounds. If they are capable of the formation of what are known as "substituted derivatives" (in simplest terms, compounds in which new radicals or groups are substituted for those in the original position), their membership in the overall class is not affected.

Nor indeed is the lack of any specific language mandating the inclusion of "substituted derivatives" any reason to assume their exclusion. Quite the opposite is the case since the assumption is that a provision for a class or kind covers all forms of that class or kind. *Nootka Packing Co. et al.* v. *United States*, 22 CCPA 464, T.D. 47464 (1935). Thus, defendant's second argument that would exclude the importation on the grounds that, as a substituted derivative, it would need a specific sanction to be included in the claimed provision, is without foundation. A substituted derivative of a named class is included in the tariff provision for that class.

In addition, the fact that some derivatives of methylamine or ethylamine are provided for elsewhere in schedule 4, either specifically or by other designation, does not mean that the general term "monomethyl monoamines" has any scope less than that encompassing the remaining possible derivatives.

An additional argument by defendant surmises that the classification of the importation under the Tariff Act of 1930 would have been pursuant to the language providing for "hydroxy alkyl amines" in paragraph 2 of said act, traces that provision to item 425.12 of the Tar-

iff Schedules of the United States insofar as it covers ethanolamines and assumes that the remaining "hydroxy alkyl amines" would fall within the assigned classification herein of item 425.52 as other nitrogenous compounds. Although there is no doubt a general intent by the drafters of the tariff schedules to continue the tariff rates which prevailed before the promulgation of the new tariff schedules in the absence of specifically indicated changes, this can hardly be determinative in a situation where the new tariff language, in its plain meaning, clearly indicates a change in coverage.

The overriding consideration in this case and the only method by which a degree of certainty and predictability of tariff classification can be maintained in the chemical schedules is by a full reliance, where appropriate, on the plain and explicit meaning of the tariff language. In this case, although defendant has mustered a series of complex and wide-ranging considerations in support of a limitation on the claimed provision, they do not individually or in concert have sufficient impact to overcome the claimed provision's plain meaning. For the above reasons we hold that the importations are properly classifiable pursuant to item 425.20 of the Tariff Schedules of the United States and dutiable according to the rate in effect at the time of entry.

Judgment will enter accordingly.