**RHODIA, INC., Appellant,**

v.

**The UNITED STATES, Appellee.**

**Customs Appeal No. 76–14.**

United States Court of Customs
and Patent Appeals.

Dec. 30, 1976.

Sharretts, Paley, Carter & Blauvelt, P. C., New York City, attys. of record, for appellant; Patrick D. Gill, New York City, of counsel.

Rex E. Lee, Asst. Atty. Gen., Washington, D. C., David M. Cohen, Chief, Customs Section, Herbert P. Larsen, New York City, attys. of record, for appellee.

RICH, Judge.

This appeal is from the judgment of the United States Customs Court, 76 Cust.Ct. 31, C.D. 4630, 411 F.Supp. 778 (1976), hereinafter *Rhodia II,* denying appellant's motion for judgment on the pleadings and granting the Government's motion for sum-

mary judgment, thereby sustaining the classification of the chemical compound N-methyl glucamine (NMG) under the "basket provision" for "other" netrogenous compounds, item 425.52 of the Tariff Schedules of the United States (TSUS). We affirm.

Appellant claims that NMG should be classified as a mono-methyl-monoamine under TSUS item 425.20 in accordance with the earlier decision of the Customs Court in *Rhodia, Inc. v. United States,* 69 Cust.Ct. 19, C.D. 4366 (1972), hereinafter *Rhodia I,* where the same issue with respect to the same compound was oppositely decided. Familiarity with the opinions of the Customs Court in both *Rhodia* cases is assumed.

The importation is a nitrogenous compound, more specifically, an alkanolamine, which is used in the formation of detergents, pharmaceuticals, dyes, and X-ray contrast media. The compound has been variously named "N-methyl glucamine," "meglumine," "1-deoxy-1-(methylamino)- *D*-glucitol," and "1-methylamino-2, 3, 4, 5, 6-pentahydroxyhexane." NMG has the following structural formula:

$$\underset{OH}{\underset{|}{CH_2}} - \underset{OH}{\underset{|}{CH}} - \underset{OH}{\underset{|}{CH}} - CH - \underset{OH}{\underset{|}{CH}} - CH_2 - \underset{H}{\underset{|}{N}} - CH_3$$

The right-hand side of the molecule, as illustrated, contains a single methyl-substituted amino group ($-NHCH_3$), while the remainder of the molecule contains a six-carbon chain substituted with five hydroxyl ($-OH$) groups. NMG may be formed by the reaction of *D*-glucose with methylamine in the presence of hydrogenating catalyst.

The issue, as we perceive it, is whether the language of TSUS item 425.20, "[m]ono-, di-, and tri- (methyl-, ethyl-, propyl-, and butyl) monoamines," provides, in part, for a *class* of substituted compounds having a mono-methyl-monoamine functional group, i. e., compounds of the formula $CH_3NR_1R_2$, where the nature of $R_1$ and $R_2$ is limited only by the imagination of the

chemist, so as to encompass alkanolamines such as NMG.[1]

In *Rhodia I*, the Customs Court held that the plain meanings of the terms "monomethyl" (having one methyl group) and "monoamine" (having one amino group), coupled with the use of the plural form "monamines," indicate that item 425.20 defines a *class* of methyl-substituted monoamines including further substituted derivatives. The court concluded that NMG was such a derivative, classifiable under item 425.20, and overruled the classification of NMG under item 425.52.

In *Rhodia II*, the Customs Court reversed its earlier decision because it was persuaded by the weight of newly presented expert opinion that it had been wrong in regarding the language of item 425.20 as indicating the existence of a *class* of monoamines, and that the importation was not a *form* of the substances provided for in item 425.20, but another compound altogether. The court went on to discuss the proper technique for naming NMG under *Chemical Abstracts* and similar nomenclature systems, noted that such technique involves determining the *principal* functional group according to specified priorities (wherein hydroxyl groups outrank amino groups), and concluded that NMG must be *named* as a polyalcohol rather than as an amine. The court stated that the monoamines described in item 425.20 "can only be those *compounds* in which the amino group is not superseded by a function of higher priority as such functions are determined in accordance with the prevailing standards of chemical nomenclature." *Rhodia II*, 76 Cust.Ct. at ___, 411 F.Supp. at 779. The Customs Court held that NMG, being an alkanolamine, is not included within the scope of item 425.20.

Appellant contends that *Rhodia I* was correctly decided and argues that NMG not only functions as an amine but also falls within the plain and explicit meaning of item 425.20. It is alleged that the term "mono-methyl-monoamines," as defined in standard lexicons, connotes a class of substituted methyl amino compounds.

Appellee argues that the Customs Court correctly characterized alkanolamines, not as monoamines, but as entirely different compounds. Appellee also notes that hydroxy alkyl amines were expressly provided for in paragraph 2 of the Tariff Act of 1930, ch. 497, § 1, 46 Stat. 590, at the original item 425.52 rate of duty,[2] and that the lower alkyl amines were traditionally classified under paragraph 5 of the Tariff Act of 1930, ch. 497, § 1, 46 Stat. 590, 591, at the original item 425.20 rate of duty.[3] On this basis, it is urged that Congress intended alkanolamines to be classified under item 425.52 in order to preserve the rate structure of the Tariff Act of 1930. The Customs Court did not rely on this theory, and appellant contends that the legislative

1. There has been much argument about the meaning and effect of headnote 1, Schedule 4, Part 2, Subpart D, TSUS, which states, in part, that the compounds of the subpart "are arranged according to functional group" and that a compound described in more than one such grouping is to be classified "in the first group in which it is *described*" (emphasis added). We perceive no genuine issue with respect to the application of headnote 1. Both parties agree that NMG must be classified as a nitrogenous compound, but it is the Government's position that NMG is simply *not described* in item 425.20.

There has also been considerable dispute over the proper relationship between the *Chemical Abstracts* rules of nomenclature and the meanings of the chemical terms in TSUS Schedule 4, Part 2, Subpart D. These arguments center around *National Polychemicals,*

*Inc. v. United States*, C.A.D. 1001, 433 F.2d 1327, 58 CCPA 37 (1970), where we stated that Congress intended to generally adopt the order of precedence among functional groups from the *Chemical Abstracts* system, not the names of individual compounds, recognizing that *Chemical Abstracts* is *an* authoritative reference in determining chemical terminology. For reasons which will appear, a discussion of the disputed relationship is unnecessary to the disposition of this case.

2. In 1963, these compounds were dutiable under paragraph 2 of the Tariff Act of 1930, as modified by T.D. 52739, at 3¢ per pound + 15% ad valorem.

3. In 1963, these compounds were dutiable under paragraph 5 of the Tariff Act of 1930, as modified by T.D. 54108, at 10.5% ad valorem.

history is equivocal, at best, and should not be consulted where there is no ambiguity.

## OPINION

We are persuaded to sustain the decision of the Customs Court that alkamolamines, such as NMG, are not provided for in item 425.20. The appropriate inquiry, however, is not what is the proper *name* for the importation. Rather, the question is what types of chemical compositions Congress intended the language of item 425.20 to encompass. Looking first to the language of the statute, and restricting our attention for the moment to the terms "[m]ono-, di-, and tri- * * * methyl- * * * monoamines," it is clear that there is not a *single* "plain and explicit meaning" which is dispositive of this case. The diametrically opposed decisions of the Customs Court and the arguments of the parties on appeal amply demonstrate the difficulty of interpreting the basic term "methyl-monoamine." From the affidavits in support of the cross-motions, it is seen that this basic term is susceptible of two constructions, to wit: (1) as the name of the specific compound methylamine ($CH_3NH_2$), and (2) as a generic term for any monoamine wherein a methyl group replaces ammoniacal hydrogen ($CH_3 NR_1R_2$).[4]

If Congress intended the first meaning of the term "methyl-monamine," i. e., the single compound $CH_3NH_2$, then appellant's cause is lost. In such a case, the addition of the terms "mono-, di-, and tri-" clearly must have been intended to *expand* what Congress viewed as a narrow term in order to include within the scope of item 425.20 those compounds specifically enumerated, namely, monomethyl monoamine ($CH_3NH_2$), dimethyl monoamine (($CH_3)_2NH$), and trimethyl monoamine (($CH_3)_3N$). Having specifically enumerated these compounds, Congress cannot reasonably be said to have intended the inclusion of other, unnamed compounds such as NMG.

Alternatively, if Congress viewed the term "methylmonoamine" as encompassing *any* compound of the formula $CH_3NR_1R_2$, then the terms "mono-, di-, and tri-" were *unnecessary* to include the three specific methyl-substituted amines listed above because either or both of $R_1$ and $R_2$ could have been a methyl group. Unless we are to conclude that Congress acted without sound purpose in the inclusion of the terms "mono-, di-, and tri-" in item 425.20, it must be assumed that these added terms were intended to *limit* the broad scope of the basic term to include just those three compounds specifically described. Having described these, again, it cannot be said that Congress intended to include others. Thus, regardless of which definition of the basic term "methyl-monoamine" Congress intended, the language of item 425.20 cannot reasonably be read to include alkanolamines such as NMG.

We note in passing that the use of the plural form "monoamines" was grammatically inescapable in view of the form of item 425.20 and does not, therefore, imply a *class* of mono-methyl-monoamino compounds. Included within the parentheses are the terms "propyl" and "butyl," both of which represent structures with various isomeric forms, i. e., n-propyl and isopropyl. Thus, it would have been incorrect to refer to "mono-propyl-monoamine," for example, since there is more than one such compound.

The exclusion of alkanolamines from item 425.20 is also supported by the legislative history. Appellee has asserted, without challenge, that hydroxy alkyl amines, such as NMG, were classified under paragraph 2 of the Tariff Act of 1930 with a rate of duty (as modified by T.D. 52739) of 3¢ per pound + 15% ad valorem, while lower alkyl amines were classified under paragraph 5 of the Tariff Act of 1930 at a rate of duty (as modified by T.D. 54108) of 10.5% ad valorem. We have recognized that Congress, in promulgating the TSUS, generally intended

---

4. *Webster's New International Dictionary* (2d ed. 1956), gives a similar bifurcated definition for the term "methylamine," which we regard as equivalent to the basic term "methyl-monamine" for purposes of construing item 425.20.

to continue existing rate treatment, and that a relevant, although not dispositive, factor in determining classification is conformity with this intention. See *National Polychemicals, Inc. v. United States*, C.A.D. 1001, 433 F.2d 1327, 58 CCPA 37 (1970). If alkanolamines not specifically provided for are classifiable under item 425.52, in accordance with appellee's construction of item 425.20, then they would have been dutiable at a rate of 3¢ per pound + 15% ad valorem at the time the TSUS went into effect, a rate identical to that provided under the 1930 Act. If, on the other hand, hydroxy alkyl amines which happen to contain a methyl group are classifiable under item 425.20, as appellant claims, there would have been a substantial reduction in duty rate to 10.5% ad valorem. There is nothing in the legislative history indicating an intention to change the traditional practice of treating the lower alkyl amines of item 425.20 and alkanolamines separately.

The judgment of the Customs Court is *affirmed*.

AFFIRMED.