**BELOIT CORP., Plaintiff,**

v.

**UNITED STATES, Defendant.**

Slip Op. 94–17.
Court No. 91–02–00085.

United States Court of
International Trade.

Feb. 2, 1994.

Fitch, King and Caffentzis (James Caffentzis), for plaintiff.

Frank W. Hunger, Assistant Attorney General of the United States; Joseph I. Liebman, Attorney-in-Charge, International Trade Field Office, Commercial Litigation Branch, Civil Division, United States Department of Justice (Carla Garcia–Benitez), for defendant.

## OPINION

CARMAN, Judge:

Plaintiff challenges the classification and liquidation of its imported merchandise pur-

suant to section 515 of the Tariff Act of 1930, as amended, 19 U.S.C. § 1515(a) (1988). This Court has jurisdiction under 28 U.S.C. § 1581(a) (1988) and, for the reasons which follow, enters judgment for plaintiff.

### I. BACKGROUND

#### A. *The Merchandise*

The merchandise at issue consists of Yankee dryer cylinders. The legislative history of item 668.05, Tariff Schedules of the United States (TSUS) (1983), which created duty-free treatment for imported Yankee dryer cylinders under the former TSUS, provides the following description of the subject merchandise:

> A Yankee dryer cylinder is a component of a papermaking machine used to dry and finish, by creping or glazing, various grades of paper. For example, most sanitary tissues and paper towels are provided with a crepe finish imparted by a Yankee dryer cylinder. In addition, these cylinders can be adapted to furnish a glaze to other grades of paper such as kraft wrapping paper.
>
> Yankee dryer cylinders range in diameter from about 10 to 18 feet and are steam heated. The shell of the cylinders ranges from 2 to 3 inches in thickness and consists of metals such as unalloyed cast iron, alloyed cast iron, and aluminum bronze.

H.R.REP. No. 257, 97th Cong., 1st Sess. 6–7 (1981). As wet sheets of paper move through the papermaking machine, the machine presses the sheets against the surface of the Yankee dryer cylinder to enable the cylinder to perform its various functions. H.R.REP. No. 1355, 95th Cong., 2d Sess. 2 (1978).

#### B. *Relevant Statutory Provisions*

Plaintiff relies on the following provisions of the Harmonized Tariff Schedules of the United States (HTSUS) (1990).

1. 8439 Machinery for making pulp of fibrous cellulosic material or for making or finishing paper or paperboard (other than the machinery of heading 8419); parts thereof:
      . . . .
      Parts:
         . . . .

8439.99          Other:
8439.99.10                    Of machinery for making paper or paperboard ... Free

2.                              CHAPTER 84

Notes

. . . .

2.     Subject to the operation of note 3 to section XVI, a machine or appliance which
       answers to a description in one or more of the headings 8401 to 8424 and at the
       same time to a description in one or more of the headings 8425 to 8480 is to be
       classified under the appropriate heading of the former group and not the latter.

       Heading 8419 does not, however, cover:

       . . . .

       (e)     Machinery or plant, designed for mechanical operation, in which a
               change of temperature, even if necessary, is subsidiary.

In addition, plaintiff refers to several items contained in the Tariff Schedules of the United
States (TSUS):

1.    912.06 [1]     Yankee dryer cylinders (provided for in item 668.06, part 4D, schedule 6)
                     ... Free ... On or before 12/31/81
2.               Machines for making cellulosic pulp, paper, or paperboard; machines for
                 processing or finishing pulp, paper, or paperboard, or making them up into
                 articles:
      668.00         Machines for making cellulosic pulp, paper, or paperboard ... Free
                     . . . .
                 Parts of the foregoing machines:
                     . . . .
                 Other:
      668.06             Parts of machines for making cellulosic pulp, paper, or paper-
                         board
3.               Machines for making cellulosic pulp, paper, or paperboard; machines for
                 processing or finishing pulp, paper, or paperboard, or making them up into
                 articles:
      668.00         Machines for making cellulosic pulp, paper, or paperboard ... Free
                     . . . .
                 Parts of the foregoing machines:
                     . . . .
                 Other:
      668.05 [2]     Yankee dryer cylinders ... Free
4.               Industrial machinery, plant, and similar laboratory equipment, whether or not
                 electrically heated, for the treatment of materials by a process involving a
                 change of temperature, such as heating, cooking, roasting, distilling, rectifying,
                 sterilizing, pasteurizing, steaming, drying, evaporating, vaporizing, condensing,
                 or cooling; instantaneous or storage water heaters, non-electrical; all the
                 foregoing (except agricultural implements, sugar machinery, shoe machinery,
                 and machinery or equipment for the heat-treatment of textile yarns, fabrics, or
                 made-up textile articles) and parts thereof:
                     . . . .
                 Other:

1.  This provision took effect on October 21, 1978
and was repealed January 12, 1983. Tariff
Schedules—Bearings, etc., and Hanger Units,
Pub.L. No. 95–500, § 2, 92 Stat. 1683 (1978);
Tariff Schedule Revisions, Pub.L. No. 97–446,
§ 108(b), 96 Stat. 2330 (1983) (repealed 1989).

2.  This provision became effective on January 1,
1982, the day following the date upon which
item 912.06 expired. H.R.Rep. No. 257 at 6.

661.67 Machinery for making cellulosic pulp, paper, or paperboard, and parts thereof ... 2.4% ad val.

Defendant relies on the following HTSUS provisions:

1. 8419 Machinery, plant or laboratory equipment, whether or not electrically heated, for the treatment of materials by a process involving a change of temperature, such as heating, cooking, roasting, distilling, rectifying, sterilizing, pasteurizing, steaming, drying, evaporating, vaporizing, condensing or cooling, other than machinery or plant of a kind used for domestic purposes; instantaneous or storage water heaters, non-electric; parts thereof:

. . . .

Dryers:

. . . .

8419.32 For wood, paper pulp, paper or paperboard:

. . . .

8419.32.50 Other ... 2.4%

2. GENERAL RULES OF INTERPRETATION

Classification of goods in the tariff schedule shall be governed by the following principles:

1. The table of contents, alphabetical index, and titles of sections, chapters and sub-chapters are provided for ease of reference only; for legal purposes, classification shall be determined according to the terms of the headings and any relative section or chapter notes....

In addition, the following TSUS provision is relevant to the Court's discussion:

1. SCHEDULE 6.—METALS AND METAL PRODUCTS
Part 4.—Machinery and Mechanical Equipment

Part 4 headnotes:

. . . .

2. Unless the context requires otherwise, and subject to headnote 1 to subpart A of this part, a multi-purpose machine is classifiable according to its principal purpose, but if such a machine is not described in a superior tariff heading as to its principal purpose, or if it has no one principal purpose, it is classifiable in subpart H of this part as a machine not specially provided for.

C. *Customs' Classification*

The United States Customs Service (Customs) classified the imported merchandise under subheading 8419.32.50, HTSUS. Subheading 8419.32.50 applies to "Dryers: .... For wood, paper pulp, paper or paperboard: .... Other: ...." Pursuant to this subheading, Customs imposed duties totalling 2.4% *ad valorem*.

Plaintiff filed timely protests under 19 U.S.C. § 1514(a) (1988) to contest Customs'

classification. Customs subsequently denied the protests under 19 U.S.C. § 1515 and, after having paid all liquidated duties, plaintiff commenced this action within the time allowed by law. On May 12, 1993, this Court granted defendant's motion to designate this action a test case under USCIT R. 84(b).

II. CONTENTIONS OF THE PARTIES

A. *Plaintiff*

Plaintiff advances three principal arguments supporting its motion for summary

judgment. First, plaintiff contends the treatment that Congress and Customs accorded to the merchandise under the former TSUS indicates the merchandise should be classified under subheading 8439.99.10, HTSUS. Plaintiff emphasizes the fact that Customs consistently classified Yankee dryer cylinders as machinery for making paper and parts thereof under item 668.06, TSUS. Pl's Br. at 2–3 (citing T.D. 56,521, 100 Treas.Dec. 771 (1965)); Customs H.Q. Ruling CLA–2:R:CV:MA 056271 E (1978) (1978 H.Q. Ruling); Customs H.Q. Ruling CLA–2:R.RUCGC 061761 BB (1980) (1980 H.Q. Ruling). In addition, plaintiff notes Congress singled out Yankee dryer cylinders for duty-free treatment from October 21, 1978 until the effective date of the HTSUS, January 1, 1989, thereby indicating its intent to distinguish the subject merchandise from other dryers which were subject to duty. Id. at 3–4 (citing Tariff Schedules—Bearings, etc., and Hanger Units, Pub.L. No. 95–500, § 2, 92 Stat. 1683 (1978); Tariff Schedule Revisions, Pub.L. No. 97–446, § 108(b), 96 Stat. 2330 (1983) (repealed 1989)).

Plaintiff's second principal contention is that Customs' classification is incorrect because the subject merchandise's purpose and function have not changed since the enactment of the HTSUS. Id. at 5. Plaintiff maintains the rationale which supported Customs' and Congress' decision to differentiate between the subject merchandise and other dryers under the TSUS precludes the application of subheading 8419.32.50, HTSUS. According to plaintiff, this rationale distinguished Yankee dryer cylinders from other dryers on the basis of Customs' and Congress' finding that the cylinder's primary purpose is to give paper a creped or glazed finish and not to dry. Id. As a result, plaintiff suggests Chapter 84, Note 2(e), HTSUS, which bars heading 8419 from applying to "machinery . . . in which a change of temperature, even if necessary, is subsidiary," incorporates the distinction recognized under the TSUS between Yankee dryer cylinders and dryers. Id. at 9–12; Pl's Reply Br. at 2–4. Therefore, plaintiff argues Customs must treat the subject merchandise under the HTSUS in the same manner as under the TSUS and classify the merchandise

as parts of a papermaking machine under subheading 8439.99.10, rather than as parts of a paper dryer under subheading 8419.32.-50.

Third, plaintiff contends Customs' classification is contrary to Congress' intent in adopting the HTSUS. Specifically, plaintiff asserts the classification contravenes Congress' intention that the transition to the HTSUS from the TSUS be "rate neutral" and the duty treatment contained in the TSUS carries over to the HTSUS. Pl's Br. at 6–7 (citing Omnibus Trade and Competitiveness Act of 1988, Pub.L. No. 100–418, § 1211; H.R. Conf.Rep. No. 576, 100th Cong., 2d Sess. at 548–50 (1988), reprinted in 1988 U.S.C.C.A.N. 1547, 1581–83; Rhodia, Inc. v. United States, 64 CCPA 39, 43, C.A.D. 1181, 546 F.2d 898, 900–01 (1976)). Plaintiff claims Congress did not incorporate the precise terms of item 668.05, TSUS—which provided duty-free treatment for Yankee dryer cylinders—because only a small number of cylinders entered the United States each year. Id. at 7–8 (citing Conversion of the Tariff Schedules of the United States Annotated into the Nomenclature of the Harmonized System, Submitting Report, USITC Pub. 1400, Inv. No. 332–131, at 33 (June 1983)) (ITC Report).

In addition, plaintiff asserts Congress' intent to distinguish the subject merchandise from dryers and accord the merchandise duty-free treatment appears in conversion tables formulated by the International Trade Commission. Id. at 8. Plaintiff emphasizes the fact that these tables cross-reference item 668.05, TSUS, to subheading 8439.99.10, HTSUS, which provides duty-free treatment for parts of papermaking machinery. Id. Finally, according to plaintiff, as Congress sought to advantage domestic paper mills and relied on the lack of United States cylinder production in adopting item 668.05, the continued absence of domestic cylinder production precludes the conclusion that Congress intended to change the tariff treatment for the product in the HTSUS. Id. at 9.

### B. Defendant

Defendant argues it is entitled to summary judgment for five primary reasons. First,

defendant maintains Customs' classification of the merchandise under subheading 8419.-32.50 is consistent with the language contained in the HTSUS and Congress' intent in promulgating the subheading. Def's Br. at 11. Defendant claims Yankee dryer cylinders are within the ambit of heading 8419 and subheading 8419.32.50 because the cylinders dry paper by using heat and are parts of rotary dryers. *Id.* at 12–13, 15 (citing CUSTOMS CO-OPERATION COUNCIL, EXPLANATORY NOTES TO THE HARMONIZED COMMODITY DESCRIPTION AND CODING SYSTEM 1173, 1176 (1st ed. 1986)) (EXPLANATORY NOTES). In addition, defendant points to the Yankee dryer's overall design and plaintiff's sales brochures to demonstrate the dryer's primary function—and the purpose served by the Yankee dryer cylinder—is to dry paper. *Id.* at 14. To the extent Congress and Customs previously stated the cylinders' drying function is not primary, defendants asserts "those statements are inapplicable here, and/or are insufficient to establish that Yankee dryers perform in the manner implied by Beloit." *Id.* at 15.

Second, assuming both subheadings 8419.-32.50 and 8439.99.10 embrace the subject merchandise, defendant contends Rule 1 of the General Rules of Interpretation (GRI), HTSUS, Chapter 84, Note 2, HTSUS, and the Explanatory Notes preclude classification under subheading 8439.99.10. With respect to GRI 1, defendant states the following: "Inasmuch as we have established above that Yankee dryers are steam heated cylinders encompassed by subheading *8419.32.50,* this merchandise is *excluded* from classification under subheading *8439.99.10* under the terms of the superior heading of that provision." *Id.* at 16–17 (emphasis in original). Similarly, defendant argues because the product at issue satisfies the description contained in heading 8419, Chapter 84, Note 2 creates a preference for classifying the product under heading 8419 instead of under heading 8439. *Id.* at 17. Moreover, according to defendant, as the Explanatory Notes to Chapter 84 bar the application of heading 8439 to a "steam

heated cylinder" and the merchandise at issue are "steam heated cylinders," the merchandise is not classifiable under subheading 8439.99.10, HTSUS. *Id.* (citing EXPLANATORY NOTES at 1229).

Third, defendant contends the legislative history of the HTSUS and the numerous Customs rulings cited by plaintiff do not support plaintiff's claimed classification. *Id.* at 21–22. Defendant emphasizes the fact that Congress indicated Customs' decisions under the TSUS are instructive, but not dispositive in construing provisions under the HTSUS. *Id.* (citing H.R. CONF.REP. NO. 576 at 549–50, *reprinted in* 1988 U.S.C.C.A.N. at 1581–83). In addition, defendant argues the prior Customs decisions upon which plaintiff relies were "predicated upon a misunderstanding of the functions of a Yankee dryer in the paper making process" and, therefore, are not instructive in interpreting the HTSUS. *Id.* functions performed by Yankee dryer cylinders. *Id.* at 22–25. Also, with respect to the 1980 Headquarters Ruling cited by plaintiff, defendant maintains Customs' discussion of the product was merely dicta and, as a result, has no weight in the instant case. *Id.* at 23, 25. Accordingly, defendant urges these prior decisions are not instructive for purposes of interpreting the HTSUS and do not support plaintiff's proposed classification. *Id.* at 22–26. Moreover, according to defendant, because Congress had already enacted item 912.06, TSUS,[3] at the time Customs issued its 1980 Ruling, Congress effectively "precluded Customs from re-evaluating the basis of its earlier classification decisions, and compelled Customs to classify Yankee dryers under the stated item." *Id.* at 26.

Fourth, defendant contends the legislative history of item 668.06, TSUS, is inapplicable to the HTSUS provisions under review. *Id.* at 29. Defendant asserts item 668.06's legislative history is irrelevant because the item provided for Yankee dryer cylinders *eo nomine* and employed language which differs from that used in the disputed HTSUS provisions.[4] *Id.* According to defendant, as the

---

3. This item granted Yankee dryer cylinders duty-free status and indicated the article was a paper-making machine part within the meaning of item 668.06, TSUS.

4. "An *eo nomine* designation is one which describes a commodity by a specific name, usually one well known to commerce." RUTH F. STURM, CUSTOMS LAW AND ADMINISTRATION, § 53.2, at 3 (3d

TSUS did not use the unqualified term "dryers" in enacting item 668.06, Congress never had reason to assess the scope of that term as it now appears in the HTSUS. *Id.* at 30. In addition, defendant claims by acceding to the International Convention on the Harmonized Commodity Description and Coding System, Congress was precluded from carrying over item 668.06 into the HTSUS. *Id.* at 30–31 (citing International Convention on the Harmonized Commodity Description and Coding System, Art. 3.1(a)(ii), June 14, 1983, *in* CUSTOMS CO-OPERATION COUNCIL, HARMONIZED COMMODITY DESCRIPTION AND CODING SYSTEM IIE (1987)) (International Convention). Therefore, defendant argues, whatever intent Congress expressed with respect to the merchandise under the TSUS does not exist in the HTSUS and does not apply when interpreting the HTSUS. *Id.* at 31.

Finally, defendant contends the legislative history of item 668.06, TSUS, does not support the conclusion that Yankee dryer cylinders' drying function is subsidiary within the meaning of Chapter 84, Note 2(e), HTSUS. *Id.* at 32. Defendant states the following:

> Congress' statements regarding Yankee dryers *in the legislative history to that eo nomine provision* do not necessarily focus on the importance of the drying function of the Yankee dryer. Rather, Congress' statements simply describe the merchandise that was intended to be covered by the *eo nomine* provision. These statements cannot be read to imply that Yankee dryers are "more than" dryers for tariff purposes.

*Id.* (emphasis in original). In addition, defendant asserts Congress did not indicate in the legislative history that the merchandise's ability to glaze and crepe paper were functions that were distinct from the merchandise's drying function. *Id.* at 33. In sum, defendant urges the legislative history does not alter the fact that the Yankee dryer cylinder's main purpose is to dry. *Id.* at 33–34. Accordingly, defendant claims subheading 8419.32.50's "provision for 'dryers' is broad enough to include the function(s) performed by the Yankee dryer." *Id.* at 34 ed. 1993) (citing *United States v. Bruckmann,* 65

(citing *Arthur J. Fritz v. United States,* 59 CCPA 46, 49, C.A.D. 1036, 452 F.2d 1399, 1402 (1971)).

## III. DISCUSSION

### A. *Presumption of Correctness*

■ As in all customs cases, a statutory presumption of correctness attaches to classifications by the Customs Service and the party challenging the classification has the burden of overcoming this presumption. 28 U.S.C. § 2639(a)(1) (1988). To determine whether an importer has overcome the statutory presumption, the Court must consider whether "the government's classification is correct, both independently and in comparison with the importer's alternative." *Jarvis Clark Co. v. United States,* 2 Fed.Cir. (T) 70, 75, 733 F.2d 873, 878, *reh'g denied,* 2 Fed. Cir. (T) 97, 739 F.2d 628 (1984).

### B. *Summary Judgment*

This test case is before the Court on cross-motions for summary judgment. Under the rules of this Court, summary judgment is appropriate "if the pleadings, depositions, answers, to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." USCIT R. 56(d). The Court will deny summary judgment if the parties present "a dispute about a fact such that a reasonable trier of fact could return a verdict against the movant." *Ugg Int'l, Inc. v. United States,* 17 CIT ——, ——, 813 F.Supp. 848, 852 (1993) (quotation and citation omitted). "In assessing the parties' claims, the Court must resolve all ambiguities and draw all reasonable inferences in favor of the party opposing summary judgment." *Id.* (citation omitted).

■ This case does not present any genuine issue of material fact. The action only requires the Court to determine the proper meaning of the tariff provisions advanced by the parties. Such a determination involves questions of law which the Court may properly resolve on motions for summary judg-

CCPA 90, C.A.D. 1211, 582 F.2d 622 (1978)).

ment. *Digital Equip. Corp. v. United States,* 8 Fed.Cir. (T) 5, 6, 889 F.2d 267, 268 (1989) (citation omitted).

C. *Application of Subheading 8419.32.50, HTSUS*

1. Legislative Intent

■ It is well-settled that "[w]here doubt or ambiguity exists as to the meaning of a statute, it is proper for courts to consult legislative history . . . and pertinent extrinsic aids, in order to determine congressional intent." STURM, CUSTOMS LAW AND ADMINISTRATION, § 52.1, at 1 (citations omitted). It is also axiomatic that "[t]he master rule of construction of tariff acts, as of other statutes, is to interpret them so as to carry out the legislative intent." *Id.* § 51.3, at 35 (citing *United States v. Clay Adams Co.,* 20 CCPA 285, 288, 1932 WL 2148 (1932)) (other citations omitted). As discussed below, ambiguities in the relevant HTSUS provisions and Congress' well-defined intent to distinguish Yankee dryer cylinders from paper dryers and allow the merchandise to enter the United States duty-free, compel the Court to conclude Customs' classification is contrary to legislative intent. In addition, this conclusion finds support in the approximately twenty-three years of consistent treatment by both Congress and Customs prior to the HTSUS' enactment.

A review of the HTSUS subheadings proposed by the parties reveals an ambiguity with respect to their application to the subject merchandise. After considering *only the language contained in both provisions* and Congress' description of the merchandise, the Court finds each provision could reasonably apply to the merchandise. Subheading 8419.32.50, advanced by defendant, includes, among other articles, *"[m]achinery . . . for the treatment of materials by a process involving a change of temperature such as . . . drying . . .; parts thereof: . . . . Dryers: . . . For wood, paper pulp, paper or paperboard: . . . . Other. . . ."* (Emphasis added). Subheading 8439.99.10, relied upon by plaintiff, encompasses *"[m]achinery for* making pulp of fibrous cellulosic material or for *making*

*or finishing paper* or paperboard (other than the machinery of heading 8419); *parts thereof:* . . . . Parts: . . . . Other: Of machinery for making paper or paperboard. . . ." Because a "Yankee dryer cylinder is *a component of a papermaking machine used to dry and finish,* by creping and glazing, various grades of paper[,]"[5] the merchandise would appear to qualify as both a part of a paper dryer under subheading 8419.32.50 and a part of a machine for making or finishing paper under subheading 8439.99.10. This dual qualification leads the Court to find *the language* of both provisions covers the merchandise.

■ In addition, the parenthetical exclusion in subheading 8439.99.10 of machinery covered by 8419 further indicates subheading 8439.99.10 and subheadings under 8419 can overlap in their application. While the parenthetical represents a legislative determination that heading 8419 must prevail over subheading 8439.99.10 *assuming heading 8419 actually applies to the merchandise,* Congress' description of the merchandise and the plausibility of plaintiff's interpretation compel the Court to conclude the statutes are ambiguous. *Cf. Al Tech Specialty Steel Corp. v. United States,* 3 Fed.Cir. (T) 1, 9, 745 F.2d 632, 639 (1984) ("The sum of it is that, on the face of the statute, the Government's position is not entirely implausible, but neither is it required. The opposing view is at least as tenable. There is therefore no 'plain meaning' of the statute on its face."). Accordingly, the Court will consider legislative history as it relates the competing tariff provisions in order to determine Congress' intent in promulgating the provisions. STURM, CUSTOMS LAW AND ADMINISTRATION, § 52.1, at 1.

The legislative history upon which the Court relies pertains to items in the former TSUS which correspond to the subheadings under review in the HTSUS. Specifically, the Court reviews the legislative history of items 912.06 and 668.06, TSUS, in order to determine what tariff treatment Congress intended to apply to Yankee dryer cylinders under the HTSUS.

---

5. H.R.REP. No. 257 at 6–7.

The legislative history of items 912.06 and 668.05, TSUS, clearly demonstrates Congress' intent to provide duty-free treatment for Yankee dryer cylinders. With respect to item 912.06, enacted in 1978, Congress expressly indicated the merchandise was properly classified under item 668.06 as "[p]arts of machines for making cellulosic pulp, paper, or paperboard." H.R.REP. No. 1355 at 2. By enacting item 912.06, Congress allowed the cylinders to enter the United States duty free from October 21, 1978 until December 31, 1981. Congress noted the following reasons for granting the merchandise duty-free treatment:

> There are no U.S. producers of Yankee Dryer Cylinders, and it is claimed that no acceptable substitutes are available domestically. The last U.S. firm to manufacture Yankee Dryer Cylinders ceased production at mid-year 1975, primarily because of large capital investment expenditures required to meet Environmental Protection Agency regulations.

*Id.* A related Senate Report added, "[t]here is no U.S. production of Yankee dryer cylinders and none is foreseeable in the near term." S.REP. No. 1241, 95th Cong., 2d Sess. 3 (1978), *reprinted in* 1978 U.S.C.C.A.N. 3660, 3662.

The legislature reaffirmed the foregoing rationale when it adopted permanent duty-free treatment for Yankee dryer cylinders under item 668.05 in 1982. In connection with this latter provision, Congress noted "[t]he ultimate consumers of Yankee dryer cylinders are domestic paper mills which utilize this equipment and are the principal proponents of the duty elimination." H.R.REP. No. 257 at 7. The legislative history of items 668.05 and 912.06 reveals a well-defined legislative intent to bolster the domestic paper industry. The Court also observes Congress gave express effect to this intent for more than ten years before the HTSUS became law.

More importantly, however, is the fact that in effectuating its policy interest with respect to the domestic paper industry, Congress clearly identified Yankee dryer cylinders as parts of papermaking machines. *See* item 912.06, TSUS. As discussed more thoroughly below, for at least thirteen years prior to Congress' adoption of item 912.06 in 1978, Customs had treated the merchandise as parts of papermaking machines and explicitly indicated the cylinders were not parts of paper dryers. *See* T.D. 56,521, 100 Treas. Dec. 771 (1965); 1978 H.Q. Ruling; 1980 H.Q. Ruling. Moreover, during this period Congress did not seek to change Customs' practice. The fact that, after at least thirteen years of uniform treatment by Customs, Congress adopted Customs' treatment and statutorily defined the merchandise as a part of a papermaking machine rather than as a part of a paper dryer strongly suggests Congress approved of Customs' practice.

The differences in terminology between the HTSUS provisions at issue in this case and their counterparts under the TSUS do not defeat the inferences drawn from Congress' adoption of Customs' practice. In short, a comparison of the HTSUS provisions at issue in this case and the TSUS provisions in effect at the time Congress adopted Customs' practice does not indicate Congress intended to change what amounted to a uniform practice of at least twenty-three years when it enacted the HTSUS.

The most pertinent of the TSUS provisions in effect prior to the time Congress granted Yankee dryer cylinders duty-free treatment are items 668.06 and 661.67. As noted above, item 668.06 applies to the following articles:

> Machines for making cellulosic pulp, paper, or paperboard; *machines for* processing or *finishing* pulp, *paper,* or paperboard, or making them up into articles: .... Machines for making cellulosic pulp, paper, or paperboard.... *Parts of the foregoing machines:* .... Other: .... *Parts of machines for making cellulosic pulp, paper, or paperboard* ....

(Emphasis added). Item 668.06's counterpart under the HTSUS, and the subheading upon which plaintiff relies, is subheading 8439.99.10. This subheading reads as follows: "*Machinery for* making pulp of fibrous cellulosic material or for *making or finishing paper* or paperboard (other than the machinery of heading 8419); *parts thereof:* .... *Parts:* .... Other: *Of machinery for making paper or paperboard* ...." (Emphasis

added). Because both provisions encompass parts of machines for making or finishing paper, it is clear they apply to parts of papermaking machinery.

Similarly, item 661.67, TSUS, parallels the provisions contained in subheading 8419.-32.50 upon which defendant relies. Item 661.67 applies to

> [i]ndustrial *machinery*, plant, and similar laboratory equipment, *whether or not electrically heated, for the treatment of materials by a process involving a change of temperature, such as* heating, cooking, roasting, distilling, rectifying, sterilizing, pasteurizing, steaming, *drying*, evaporating, vaporizing, condensing, or cooling; instantaneous or storage water heaters, non-electrical; *all the foregoing* (except agricultural implements, sugar machinery, shoe machinery, and machinery or equipment for the heat-treatment of textile yarns, fabrics, or made-up textile articles) *and parts thereof.* .... Other: *Machinery for making cellulosic pulp, paper, or paperboard, and parts thereof....*

(Emphasis added). Subheading 8419.32.50, in turn, applies to the following articles:

> *Machinery*, plant or laboratory equipment, *whether or not electrically heated, for the treatment of materials by a process involving a change of temperature, such as* heating, cooking, roasting, distilling, rectifying, sterilizing, pasteurizing, steaming, *drying*, evaporating, vaporizing, condensing or cooling, other than machinery or plant of a kind used for domestic purposes; instantaneous or storage water heaters, non-electric; *parts thereof.* .... Dryers: .... For wood, paper pulp, paper or paperbound: .... Other....

(Emphasis added). As both of these provisions apply to parts of *"machinery ... involving a change of temperature, such as ... drying"* and both include either *"machinery for making ... paper ... and parts thereof"* or *"dryers ... for paper,"* the provisions are clearly similar. The important difference between item 661.67 and subheading 8419.32.50 is the provision for "dryers" in the subheading.

While the term "dryer" in subheading 8419.32.50 causes the subheading to diverge from its TSUS predecessor, the term does not alter Customs' determination that Yankee dryers cylinders are not parts of paper dryers to which Congress adhered for at least twenty-three years prior to the enactment of the HTSUS. The language contained in item 661.67, which was in effect at the time Congress enacted items 912.06 and 668.05, TSUS, was unquestionably broad enough to cover *"dryers ... for paper"* which currently appears in subheading 8419.32.50 because the item included, among other articles, *"machinery ... involving a change of temperature, such as ... drying"* and *"machinery for making ... paper ... and parts thereof."* The application of the preceding item to paper dryers is reasonable because drying is "[a]n operation in which a liquid, usually water, is removed from a wet solid in equipment termed dryers ..." by the use of heat. 5 McGRAW HILL ENCYCLOPEDIA OF SCIENCE & TECHNOLOGY 420 (6th ed. 1987). As paper dryers function by treating paper with heat—"a process involving a change of temperature"—, such articles would fall under item 661.67. Nevertheless, neither Congress nor Customs ever opted to classify the subject merchandise under item 661.67 or its predecessor during the twenty-three years preceding the HTSUS.

Despite the fact that the scope of item 661.67 included paper dryers, Congress expressly determined Yankee dryer cylinders were properly classifiable under as "[p]arts of machines for making cellulosic pulp, paper, or paperboard." Items 912.06, 668.06, TSUS (1978); H.R.REP. No. 1355 at 2. Because the terminology contained in item 661.67 clearly encompassed parts of paper dryers and Congress expressly found Yankee dryer cylinders to be parts of papermaking machines under item 668.06, Congress' decision to include the term "dryers" in subheading 8419.-32.50 does not indicate an intention to expand the scope of the subheading beyond the breadth of item 661.67 to reach the subject merchandise. In sum, the Court finds Congress' decision to include the term "dryers" does not signal an intent to diverge from the long-held view that cylinders are properly classified as parts of papermaking machinery. Consistent with this long-held view,

therefore, the Court concludes Yankee dryer cylinders are properly classifiable under subheading 8439.99.10 as parts of a papermaking machine and not as parts of paper dryers under subheading 8419.32.50.

Defendant, however, claims the Explanatory Notes authored by the Customs Co-operation Council demonstrate the cylinders are parts of "dryers" within the meaning of subheading 8419.32.50. Specifically, defendant claims the article is part of a rotary dryer which the Explanatory Notes to Chapter 84 indicate falls under heading 8419. These Notes state heading 8419 includes rotary dryers that "consist of revolving cylinders or drums which may be heated internally or externally [and] are used in various industries (paper-making, . . . etc.)." EXPLANATORY NOTES at 1176.

Although the Explanatory Notes are "generally indicative of proper interpretation of the Harmonized Tariff System, [they] are not legally binding on the United States." *Lynteq, Inc. v. United States,* 10 Fed.Cir. (T) ——, ——, 976 F.2d 693, 699 (1992) (quoting H.R.CONF.REP. No. 576, 100th Cong., 2d Sess. 549 (1988), *reprinted in* 1988 U.S.C.C.A.N. 1547, 1582) (quotations omitted). While the Explanatory Notes and the common meaning of the term "dryer" appear to provide some support for defendant's claim, the result required by defendant's reasoning is clearly contrary to Congress' intent with respect to treating the merchandise as parts of papermaking machines rather than as parts of paper dryers. *See Madison Galleries, Ltd. v. United States,* 7 Fed.Cir. (T) 56, 58, 870 F.2d 627, 629 (1989) (citations omitted) (indicating a "clearly expressed legislative intention" may overcome contrary statutory language).

The Court also notes at the time Congress enacted items 912.06 and 668.05, Schedule 6, Part 4, Headnote 2, which applied to items 668.05, 668.06, and 661.67, required Customs to classify articles according to their "principal purpose." When viewed in conjunction with Headnote 2, Congress' decisions to (1) classify Yankee dryer cylinders as parts of papermaking machinery under item 668.06 and (2) adopt an *eo nomine* provision under the superior heading for papermaking ma-

chinery, suggests the legislature did not regard the article's drying ability as its "primary purpose." Such an indication further convinces the Court the merchandise is properly classifiable under subheading 8439.99.10. *Cf.* Chapter 84, Note 2(e), HTSUS ("Heading 8419 does not, however, cover . . . [m]achinery . . . in which a change of temperature, even if necessary, is *subsidiary*.") (emphasis added).

Contrary to defendant's position, the fact that the HTSUS does not contain the *eo nomine* provision for Yankee dryer cylinders in item 668.05, TSUS, does not diminish the significance of the distinction that Congress recognized between the cylinders and parts of paper dryers under item 661.67, TSUS. As defendant correctly notes, by voting to accede to the Harmonized Commodity Description and Coding System, Congress agreed, in part, not to "modify the scope of the Sections, Chapters, headings or subheadings of the Harmonized System." International Convention, Art. 3.1(a)(ii); *see* Def's Br. at 30. The addition of an *eo nomine* provision, however, would modify the "scope of the . . . subheadings of the Harmonized System" in contravention of article 3.1(a)(ii). As a result, the Court does not interpret Congress' failure to incorporate item 668.05's *eo nomine* terms into the HTSUS as an indication that it no longer intended to provide Yankee dryer cylinders with duty-free treatment.

This conclusion finds additional support in the ITC Report cited by plaintiff. This report, which cross-references items under the TSUS with subheadings under the HTSUS, matches the TSUS *eo nomine* provision for Yankee dryer cylinders under item 668.05 with subheading 8439.99.10, the classification urged by plaintiff. ITC Report at 252. The ITC Report also pairs item 661.67, TSUS, with subheading 8419.32.50, HTSUS, the tariff provision advanced by defendant. *Id.* at 249. Because Customs has the statutory authority to make classification determinations rather than the ITC, the Court does not give great weight to the ITC document. *See* TSUSA/HTSUS Cross Reference Clarification, 53 Fed.Reg. 27,447 (Customs Serv.1988) (indicating the ITC Report "*should not be*

*viewed as a substitute for the traditional tariff classification process* " administered by Customs) (emphasis in original). Nevertheless, as Congress charged the ITC with the responsibility of representing United States interests in the Customs Co-operation Council's Harmonized System Committee, the ITC's interpretations are clearly relevant to the Court's inquiry. *See* H.R.CONF.REP. NO. 576 at 549, *reprinted in* 1988 U.S.C.C.A.N. at 1582.

The policies underlying Congress' decision to grant Yankee dryer cylinders duty-free treatment also support the Court's conclusion that the merchandise is properly classifiable under subheading 8439.99.10. As noted above, Congress allowed the merchandise to enter duty-free for the following three reasons: (1) there were no United States manufacturers of Yankee dryer cylinders; (2) there were no foreseeable United States market entrants who would manufacture the product; and (3) the domestic paper industry—the ultimate consumers of the product—strongly supported such treatment. H.R.REP. No. 1355 at 2; S.REP. No. 1241 at 3, *reprinted in* 1978 U.S.C.C.A.N. at 3662; H.R.REP. No. 257 at 7. As mentioned previously, the foregoing suggests Congress acted in order to strengthen the domestic paper industry and did not believe duty-free treatment for Yankee dryer cylinders would hinder United States industry. Duty-free treatment, therefore, was the mechanism by which Congress sought to achieve its purpose. Because the Court finds Congress did not intend to change its treatment of Yankee dryer cylinders when it enacted the HTSUS, the Court must interpret the new tariff provisions so as to give effect to Congress' purpose in allowing the merchandise to enter duty-free. *See Mount Washington Tanker Co. v. United States,* 69 CCPA 23, 26, 665 F.2d 340, 343 (1981) (relying on the legislative history of 19 U.S.C. § 1466(a) "to discern the nature of the protection which Congress intended to provide" and which the court was "obliged to effect") (citation omitted); STURM, CUSTOMS LAW AND ADMINISTRATION, § 51.2, at 31 ("In construing tariff acts, the courts take

into consideration the broad purposes of the legislation."). Accordingly, the Court concludes the duty-free treatment available under the provision advanced by plaintiff, subheading 8439.99.10, best conforms to Congress' intent and purpose in providing especially for Yankee dryer cylinders.

Defendant nevertheless claims the Explanatory Notes to Chapter 84 bar subheading 8439.99.10 from applying to Yankee dryer cylinders. Specifically, defendant emphasizes the fact that the Explanatory Notes indicate heading 84.39 does not apply to "steam heated cylinder[s]." Def's Br. at 17 (citing EXPLANATORY NOTES at 1229). Therefore, according to defendant, as Yankee cylinders are "steam heated cylinder[s]," they are not classifiable under subheading 8439.99.10.

Defendant's position is unpersuasive. As noted previously, although the Explanatory Notes generally indicate the "proper interpretation of the Harmonized Tariff System, [they] are not legally binding on the United States." *Lynteq,* 10 Fed.Cir. (T) at —, 976 F.2d at 699. Moreover, to the extent defendant's interpretation of the Explanatory Notes conflicts with clear legislative intent, this Court declines to follow such an interpretation. Therefore, assuming the Explanatory Note cited by defendant would exclude Yankee dryer cylinders from the reach of heading 84.39 and subheading 8439.99.10 (by application to the HTSUS),[6] this Court finds such an interpretation would defeat Congress' express finding that the cylinders are parts of papermaking machines. *See* H.R.REP. No. 1355 at 2; S.REP. No. 1241 at 3, *reprinted in* 1978 U.S.C.C.A.N. at 3662. Accordingly, this Court concludes the Explanatory Note does not apply to the particular facts of this case.

2. Customs' Uniform Practice

Customs' long-standing practice of classifying Yankee dryer cylinders under item 668.06 prior to the enactment of item 912.06 and 668.05 also supports the Court's conclu-

---

**6.** This Court expresses no opinion as to whether, in the absence of contrary congressional intent, the Explanatory Note cited by defendant actually excludes Yankee dryer cylinders from the scope of heading 8439.

sion that the article is properly classified under subheading 8439.99.10. As defendant properly notes, "decisions by the Customs Service . . . interpreting nomenclature under the TSUS are not to be deemed dispositive in interpreting the HTS." H.R.Conf.Rep. No. 576 at 549, *reprinted in* 1988 U.S.C.C.A.N. at 1582. The preceding passage, however, also indicates "on a case-by-case basis prior decisions should be considered instructive in interpreting the HTS, particularly where the nomenclature previously interpreted in those decisions remains unchanged and no dissimilar interpretation is required by the text of the HTS." *Id.* at 549–50, *reprinted in* 1988 U.S.C.C.A.N. at 1582–83.

As noted above, for at least thirteen years before Congress enacted item 912.06, Customs consistently classified Yankee dryer cylinders under item 668.06 as parts of papermaking machines. *See* T.D. 56,521, 100 Treas.Dec. 771 (1965); 1978 H.Q. Ruling; 1980 H.Q. Ruling. During this period, Customs expressly distinguished Yankee dryer cylinders from dryers and parts of dryers. For example, in the 1978 H.Q. Ruling, the agency classified the "dryer section" of a papermaking machine under item 661.70— the precursor to item 661.67 discussed above—and classified the "Yankee cylinder" under 668.06 as a part of a papermaking machine. 1978 H.Q. Ruling at 1. In a subsequent ruling, Customs differentiated Yankee air systems from Yankee cylinders, indicating the former was properly classified under item 661.67 and the latter under item 668.06. 1980 H.Q. Ruling at 3. Customs provided the following reasoning:

> Yankee air systems described as high velocity, high temperature air systems used as dryers. We assume these systems involve the duct work and hood section, but not the cylinder, of a "yankee" papermaking machine. Yankee cylinders have consistently been classified in item 668.06, TSUS. *See* T.D. 56521 (136) and item 912.06, TSUS, covering such cylinders. The rationale for this classification is that the cylinders are not really "dryers" since their main purpose is to produce a glazed finish on the paper. The main purpose of the hood and ductwork portion of the air system for a yankee machine, however, is

simply to dry the paper by eliminating moisture. Given this different purpose, we believe that the air system, if imported separately, is properly considered a dryer and classified in item 661.67, TSUS.

*Id.* The foregoing amply demonstrates Customs' long-held understanding that Yankee dryer cylinders were distinguishable from dryers and were properly classifiable as parts of a papermaking machine rather than parts of a dryer.

In this action, however, defendant claims Customs' previous rulings misunderstood and mischaracterized the functions of Yankee dryer cylinders. Def's Br. at 22–25. Defendant also asserts Customs' statements in the 1980 Headquarters Ruling set forth above were merely dicta to which this Court should give no effect. *Id.* at 22, 25. Moreover, defendant urges Customs' revised interpretation is entitled to deference from this Court. *Id.* at 9–10 (citations omitted).

None of defendant's assertions persuades the Court that Customs' current position with respect to Yankee dryer cylinders is correct. The various lexicographic sources to which defendant refers in its brief uniformly indicate the cylinders assist in drying paper, but they also show the product is integral in finishing paper. *See* Handbook of Pulp and Paper Technology 394 (2d ed. 1965) (Def's Ex. B); III Papermaking and Paperboard Making 410–11, 424 (2d ed. 1970) (Def's Ex. D); Handbook for Pulp & Paper Technologists 296–98 (7th ed. 1989) (Def's Ex. F). Contrary to defendant's assertions, these lexicographic sources do not suggest Customs' earlier rulings misunderstood or mischaracterized the subject merchandise's functions.

More significant, however, is the fact that Congress adopted the position taken in Customs' rulings. The passage of items 912.06 and 668.06 in 1978 and 1982, respectively, clearly demonstrates Congress approved of Customs' interpretation that Yankee dryer cylinders were properly classified as parts of papermaking machinery rather than as parts of paper dryers. *See* Sturm, Customs Law and Administration, § 52.4, at 27–28. Because of the lexicographic support for Cus-

toms' original characterization of Yankee dryer cylinders and the legislative approval of Customs' reasoning implicit in Congress' enactment of item 912.06 and 668.06, this Court rejects defendant's claim that the rulings misunderstood and mischaracterized the functions of Yankee dryer cylinders.

■ The Court also declines to defer to Customs' revised interpretation of Yankee dryer cylinders' classification. While it is true that the courts must defer to an agency's revised interpretation of a statute that the agency administers,[7] "an agency interpretation which conflicts with the same agency's earlier interpretation is entitled to considerably less deference than a consistently held agency view." *Madison Galleries,* 7 Fed.Cir. (T) at 60, 870 F.2d at 631 (citing *Immigration and Naturalization Serv. v. Cardoza–Fronseca,* 480 U.S. 421, 447 n. 30, 107 S.Ct. 1207, 1221, 94 L.Ed.2d 434 (1987)). In short, this Court will not defer to an agency's interpretation when there are "compelling indications" that it is wrong. *Miller v. Youakim,* 440 U.S. 125, 145 n. 25, 99 S.Ct. 957, 969, 59 L.Ed.2d 194 (1979) (citation omitted).

Several aspects of this case provide "compelling indications" that Customs' revised interpretation is incorrect. As discussed previously, Customs' current interpretation is contrary to Congress' intent to distinguish Yankee dryer cylinders from parts of paper dryers and to provide the merchandise with duty-free treatment. In addition, the fact that the nature and function of the merchandise do not appear to have changed since Congress adopted Customs' earlier rulings further suggests Customs' new interpretation is incorrect.[8] Moreover, the lexicographic sources upon which defendant relies to establish the cylinders are paper dryer parts, uniformly show the cylinders' ability to finish paper is integral to their use. As a result, instead of supporting Customs' new interpretation, these sources bolster Customs' earlier rulings which defendant eschews in this case.

In sum, therefore, the Court refuses to defer to Customs' interpretation in this case. *Cf. Al Tech,* 3 Fed.Cir. (T) at 13, 745 F.2d at 642 (A reviewing court's deference is constrained by its "obligation to honor the clear meaning of a statute, as revealed by its language, purpose, and history.") (citations and quotations omitted). The Court concludes Customs' uniform and long-standing practice, as codified in items 912.06 and 668.05, demonstrates Customs' classification of Yankee dryer cylinders under subheading 8419.32.50 is incorrect and the merchandise is properly classifiable under subheading 8439.99.10.

### IV. CONCLUSION

After considering all of the parties' contentions, the Court makes the following holdings: (1) plaintiff has overcome the statutory presumption of correctness attached to Customs' classification of Yankee dryer cylinders under subheading 8419.32.50, HTSUS (1989) and (1990); and (2) plaintiff has demonstrated the merchandise is properly classifiable under subheading 8439.99.10, HTSUS (1989) or (1990), depending on date of entry.

### JUDGMENT

This case having been duly submitted for decision, and the Court after due deliberation, having rendered a decision herein; now, in conformity with said decision it is hereby

**ORDERED** that the classification of the subject merchandise by the United States Customs Service under subheading 8419.32.-50, HTSUS (1989) and (1990), is reversed; and it is further

**ORDERED** that the United States Customs Service shall reliquidate the subject merchandise under subheading 8439.99.10, HTSUS (1989) or (1990), depending on date of entry, and shall refund all excess duties with interest as provided by law.

---

**7.** *See Rust v. Sullivan,* 111 S.Ct. 1759, 1769 (1991).

**8.** *See* Examination Before Trial of Alan Horowitz, Witness for the Defense at 107–08, 112–13

(indicating Yankee dryer cylinders have not changed since Customs' rulings and Congress adopted the rulings in items 912.06 and 668.05).