**HEMSCHEIDT CORPORATION, Plaintiff,**

v.

**UNITED STATES, Defendant.**

**Court No. 92–09–00591. Slip Op. 94–113.**

United States Court of International Trade.

July 8, 1994.

224

Robert Wray Associates, Robert T. Wray, Washington, DC, for plaintiff.

Frank W. Hunger, Asst. Atty. Gen., Joseph I. Liebman, Attorney-in-Charge, International Trade Field Office, Commercial Litigation Branch, Civil Div., U.S. Dept. of Justice, Mark S. Sochaczewsky, Washington, DC, for defendant.

## OPINION

GOLDBERG, Judge:

This matter is before the court on plaintiff's motion for summary judgment. Plaintiff, Hemscheidt Corporation ("Hemscheidt"), contests the June 19, 1992 decision of the United States Customs Service ("Customs") to deny Hemscheidt's protest against Customs' classification of the subject merchandise. The court exercises its jurisdiction pursuant to 28 U.S.C. § 1581(a) (1988).

## BACKGROUND

The subject merchandise consists of self-propelled hydraulic shield supports for use in underground coal mining machinery ("shield supports"). Shield supports are one of three components of a long wall mining machine; such machines are comprised of: (1) a cutting device which removes the coal as it moves along the face of the coal deposit; (2) a face conveyer, located underneath the cutting tool, which transports the coal as it is removed; and (3) an advancing mechanism and shield support which serve as a platform for (1) and (2). A shield support advances the cutting device and face conveyor toward the new face as the coal is cut, and protects the cutting mechanism and the conveyor from the newly exposed roof at the face of the deposit. No single component, or even two components, could function as the coal mining machinery for which they were designed without the third component. *Plaintiff's Complaint*, Statement of Facts ¶¶ 1–3; *Defendant's Answer* at 1.

Hemscheidt, an importer of shield supports, asserts that it entered, and Customs liquidated, twenty-one entries of shield supports under Heading 8430 of the Harmonized Tariff Schedule of the United States ("HTSUS"), after the HTSUS went into effect on January 1, 1989 but before September 1990. *Brief in Support of Plaintiff's Motion for Summary Judgment ("Plaintiff's Brief")* at 7; *Affidavit of John Myron* at 1. Heading 8430, HTSUS, covers, *inter alia*, excavating and extracting machinery for

earth, minerals, and ores. Between August 29, 1990, and January 29, 1991, Hemscheidt made four additional entries totalling 290 shield supports under subheading 8430.31.00, HTSUS, at a duty rate of 2.5 percent *ad valorem*. *Plaintiff's Complaint*, Statement of Facts ¶¶ 15–18. In April 1991, however, Customs liquidated these four entries under subheading 8479.89.90, HTSUS, at a duty rate of 3.7 percent *ad valorem*, and demanded that Hemscheidt pay the difference in duties, plus interest. Heading 8479 is a basket provision covering machines having individual functions and not specified or included elsewhere in chapter 84 of the HTSUS.

Hemscheidt protested Customs' liquidation classification of these four entries. Upon denial of its protest by Customs, Hemscheidt commenced this action on August 28, 1992. Hemscheidt now seeks a ruling from this court that shield supports are classifiable under either subheading 8430.50.50 or 8431.-49.90, HTSUS. Subheading 8430.50.50 imposes a duty rate of 2.5 percent *ad valorem*, and covers "other" self-propelled excavating and extracting machinery for earth, minerals, and ores. Subheading 8431.49.90 also imposes a duty rate of 2.5 percent *ad valorem*, and covers "other" parts for use with machines mentioned under Headings 8425 to 8430. On October 20, 1993, Hemscheidt filed, pursuant to USCIT Rule 56, the summary judgment motion that is presently before the court.

The parties agree that, prior to the enactment of the HTSUS, there was a uniform and established practice ("UEP") of classifying shield supports as extracting machinery under Item 664.08 of the Tariff Schedules of the United States ("TSUS"), dutiable at the rate of 2.5 percent *ad valorem*. *Plaintiff's Brief* at 8; *Defendant's Memorandum in Support of Its Opposition to Plaintiff's Motion for Summary Judgment ("Defendant's Brief")* at 4. The parties disagree, however, whether that UEP continued after the HTSUS went into effect on January 1, 1989. Customs contends that the UEP applicable under the TSUS was terminated as of that date. Hemscheidt argues that a UEP of classifying shield supports as extracting machinery survived implementation of the HTSUS, and continues to apply given Cus-

toms' failure to provide the requisite notice of departure from that UEP.

The issue presented to the court is whether, as a matter of law, a UEP of classifying the subject merchandise as extracting machinery survived implementation of the HTSUS. This classification dispute does not raise genuine issues of material fact, but only a question of law properly decided by the court on a motion for summary judgment. *See, e.g., Semperit Indus. Prods., Inc. v. United States*, — CIT —, —, 855 F.Supp. 1292, 1297 (CIT June 14, 1994). If the court finds that the referenced UEP attached to Headings 8430 and 8431 as of January 1, 1989, the court must then determine whether Hemscheidt was afforded proper notice of Customs' decision to classify shield supports under Heading 8479 of the HTSUS.

■ The challenging importer has the burden of overcoming the statutory presumption that Customs' classification decision is correct. 28 U.S.C. § 2639(a)(1) (1988). This court will not sustain Customs' decision, however, if there are compelling indications that it is incorrect. *See Jarvis Clark Co. v. United States*, 2 Fed.Cir. (T) 70, 74–75, 733 F.2d 873, 877–78 (1984).

## DISCUSSION

The court will first determine whether the TSUS UEP survived enactment of the HTSUS, and if so, to which HTSUS provision(s) that UEP attached, i.e. Headings 8430 and 8431, or Heading 8479. The analytical framework applied in *Beloit Corp. v. United States*, 18 CIT —, 843 F.Supp. 1489 (1994), is equally applicable in the present case. *Beloit* also involved a dispute over the proper classification of merchandise after implementation of the HTSUS. The plaintiff in *Beloit* contended that a uniform classification practice lasting twenty-three years under the TSUS continued to apply after the HTSUS became effective, despite Customs' insistence on classifying the subject merchandise under a dissimilar HTSUS provision. *Beloit*, 843 F.Supp. at 1493. Analogous to this case, the TSUS provision in *Beloit* was similar to, but not identical to, the HTSUS provision suggested by plaintiff; also, the provision advo-

cated by Customs in *Beloit* marked a significant departure from prior practice. *Id.* at 1498.

In deciding to grant plaintiff's motion for summary judgment, the *Beloit* court considered several factors: the language of the competing classification provisions; the over twenty-three years of uniform treatment of the merchandise by both Congress and Customs prior to implementation of the HTSUS; the relevant *Explanatory Notes;*[1] and a 1988 International Trade Commission Report,[2] also cited by Hemscheidt in this case. *Beloit,* 843 F.Supp. at 1496–1502. Weighing similar factors here, the court finds that Customs' statutory presumption of correctness has been overcome and that the subject imports are properly classified under Heading 8430, HTSUS.

### A. Comparison of TSUS and HTSUS Plain Language

■ Although the language of Headings 8430 and 8431, HTSUS, is not identical to the language of Item 664.08, TSUS, there are significant similarities. Item 664.08, TSUS, and Headings 8430 and 8431, HTSUS, are reprinted below.

**Item 664.08, TSUS (1987):**

Mechanical shovels, coal-cutters, *excavators, scrapers,* bulldozers, and *other excavating, levelling, boring,* and *extracting machinery,* all the foregoing, whether stationary or mobile, *for earth, minerals, or ores; pile drivers; snow plows,* not self-propelled; all the foregoing and *parts thereof:* ... Other[.] (Emphasis added).

**Heading 8430, HTSUS (1991):**

*Other* moving, grading, *leveling, scraping, excavating,* tamping, compacting, *extracting* or *boring machinery, for earth, minerals or ores; pile-drivers* and pile-extractors; *snowplows* and snowblowers[.] (Emphasis added).

**Heading 8431, HTSUS (1991):**
*Parts* suitable for use solely or principally with the machinery of headings 8425 to 8430[.] (Emphasis added).

The emphasized language is common to both Item 664.08, TSUS, and Headings 8430 and 8431, HTSUS. The court further notes that coal-cutters are now found in subheadings 8430.31.00 and 8430.39.00, HTSUS, while self-propelled bulldozers and mechanical shovels are now found in Heading 8429, HTSUS. When viewed together in their entirety, it is thus evident that Headings 8430 and 8431 substantially replace Item 664.08, either word for word or with analogous language.

In contrast, a comparison of the language in Item 664.08, TSUS, and Heading 8479, HTSUS, is considerably less fruitful. These provisions are reprinted below.

**Item 664.08, TSUS (1987):**
Mechanical shovels, coal-cutters, excavators, scrapers, bulldozers, and other excavating, levelling, boring, and extracting machinery, all the foregoing, whether stationary or mobile, for earth, minerals, or ores; pile drivers; snow plows, not self-propelled; all the foregoing and parts thereof: ... Other[.]

**Heading 8479, HTSUS (1991):**
Machines and mechanical appliances having individual functions, not specified or included elsewhere in this chapter; parts thereof[.]

There is no common language between the two provisions. The HTSUS language is considerably less specific than the TSUS language, a function of the fact that Heading 8479 is a basket provision covering merchandise not specified or included elsewhere in chapter 84. Furthermore, Heading 8479 adds a special criterion: products included in this category must have "individual functions." No such requirement existed in the TSUS provision. Classifying shield supports under Heading 8479, HTSUS, would thus be a noticeable departure from Item 664.08, TSUS.

---

1. Customs Co–Operation Council, *Harmonized Commodity Description and Coding System: Explanatory Notes* (1986) (*"Explanatory Notes "*).

2. U.S. International Trade Commission, *Continuity of Import and Export Trade Statistics After Implementation of the Harmonized Commodity Description and Coding System,* USITC Pub. No. 2051 (Jan.1988) (*"1988 ITC Conversion Report "*).

The legislative history of the Omnibus Trade and Competitiveness Act of 1988 indicates that the conversion from the TSUS to the HTSUS was to be essentially revenue neutral, and that prior decisions

> by the Customs Service and the courts interpreting nomenclature under the TSUS are not to be deemed dispositive in interpreting the HTS. Nevertheless, on a case-by-case basis prior decisions should be considered instructive in interpreting the HTS, *particularly where the nomenclature* previously interpreted in those decisions *remains unchanged and no dissimilar interpretation is required by the text of the HTS.*

H.R.Rep. No. 576, 100th Cong., 2d Sess. 549–50 (1988) (emphasis added). This court is obliged "'to honor the clear meaning of a statute, as revealed by its language, purpose, and history.'" *Southeastern Community College v. Davis*, 442 U.S. 397, 411, 99 S.Ct. 2361, 2369, 60 L.Ed.2d 980 (1979) (citation omitted). Customs' present classification of shield supports under Heading 8479, HTSUS, which conflicts with both the express language of Heading 8430, HTSUS, and "with [Customs'] earlier interpretation[,] is entitled to considerably less deference than [would] a consistently held agency view." *Madison Galleries, Ltd. v. United States*, 7 Fed.Cir. (T) 56, 60, 870 F.2d 627, 631 (1989) (citation omitted). Viewing the language in Headings 8430 and 8431 as a modification of the TSUS language is clearly less disruptive than is Customs' liquidation classification under Heading 8479. The new HTSUS provisions represent only a slight modification in that a separate heading for related parts, i.e. Heading 8431 was added. A comparison of the provisions at issue simply fails to indicate that Congress intended to alter a UEP dating back over twenty years when it enacted the HTSUS.[3]

## B. *Review of Relevant Explanatory Notes*

The *Explanatory Notes* for Heading 8479, HTSUS, further illustrate that Customs in-

correctly liquidated shield supports under this provision. *Explanatory Note 84.79* states that Heading 8479 is restricted to machinery having individual functions, which:

> (a) Is not excluded from this Chapter by the operation of any Section or Chapter Note[;] and (b) Is not covered more specifically by a heading in any other Chapter of the Nomenclature[;] and (c) *Cannot be classified in any other particular heading of this Chapter since:*

> (i) *No other heading covers it by reference to its method of functioning, description or type[;]* and (ii) *No other heading covers it by reference to its use or to the industry in which it is employed[;]* or (iii) It could fall equally well into two (or more) other such headings (general purpose machines).

*Explanatory Note 84.79* at 1314 (emphasis added). Classifying shield supports with other self-propelled extracting machinery under Heading 8430, HTSUS, is consistent with the intention expressed in the *Explanatory Notes* to group together merchandise with similar function, description or type. Shield supports have no function other than as a component of long wall coal mining machinery; indeed, Customs has not even suggested that the function of shield supports has changed since implementation of the HTSUS. Furthermore, none of the other subheadings under Heading 8479 are even remotely related to the coal mining industry in general or the function of shield supports in particular. The subheadings under Heading 8479 refer to machinery for: public works; extraction or preparation of animal or fixed vegetable fats or oils; presses for the manufacture of particle board; treating wood or cork; making rope or cable; treating metal; mixing, kneading, crushing, grinding, screening, sifting, homogenizing, emulsifying or stirring. *Explanatory Note 84.79* at 1313–14. In contrast, both *Explanatory Note 84.30* and Heading 8430 itself, expressly

---

3. In 1963, shield supports were classifiable under Item 664.05, TSUS, the predecessor classification provision to Item 664.08, TSUS. The language applicable to shield supports did not change as a result of this renumbering. *Compare* Item 664.05, TSUS (1963) *with* Item 664.08,

TSUS (1987). Hemscheidt traces the TSUS UEP to at least February 1967. *Plaintiff's Complaint*, Statement of Facts ¶ 10 (citing a Customs ruling letter numbered C.I.E. 227/67 and dated February 17, 1967).

**228**

establish that this provision relates to the mining industry, including the coal mining industry. *See Explanatory Note 84.30* at 1205.

The court thus finds that classifying shield supports with other merchandise from the same industry and with similar uses under Heading 8430, HTSUS, is more consistent with prior practice, in contrast to Heading 8479, HTSUS, which does not encompass such merchandise.

### C. *1988 ITC Conversion Report*

Hemscheidt also cites the *1988 ITC Conversion Report* as additional support for its argument that Headings 8430 and 8431, HTSUS, replace Item 664.08, TSUS. The chart contains numerous cross-references between Item 664.08, TSUS, and Headings 8430 and 8431, HTSUS. *1988 ITC Conversion Report,* Annex I at 250. Significantly, Customs' proposed classification heading, i.e. Heading 8479, is not cross-referenced to Item 664.08, TSUS. *See id.,* Annex II at 276–77.

■ The court notes that the conversion chart is only a guide, and is not dispositive of tariff classification disputes. *See 1988 ITC Conversion Report* at 3; *TSUSA/HTSUS Cross Reference Clarification,* 53 Fed.Reg. 27,447 (July 20, 1988). Nevertheless, without giving the publication undue weight, the court finds that the *1988 ITC Conversion Report* lends further support to Hemscheidt's argument that an abrupt departure from a prior uniform and established classification practice with regard to shield supports was not intended.

In summary, when the HTSUS was implemented, a UEP of classifying shield supports as extracting machinery had been in effect for over twenty years. The language from the prior TSUS classification was carried over, nearly verbatim, in Headings 8430 and 8431, HTSUS. In addition, the *1988 ITC Conversion Report* cross-references Item 664.08, TSUS, with Headings 8430 and 8431,

HTSUS, thus lending further support to Hemscheidt's position, as do the relevant *Explanatory Notes.* The court therefore concludes that the UEP established under the TSUS with regard to shield supports was carried over to Headings 8430 and 8431 of the HTSUS.

### D. *Notice*

■ Having thus determined that the TSUS UEP continues to apply under the HTSUS, the court turns to the final issue raised by Hemscheidt; that is, whether Customs was required to publish a notice in the Federal Register thirty days prior to the effective date of the imposition of an increased duty rate applicable to shield supports. *Plaintiff's Brief* at 6. The relevant statute, 19 U.S.C. § 1315(d) (1988), requires publication of notice of a change in classification which results in an increase in duty, but only for merchandise previously classified in accordance with a UEP.[4] Customs has conceded that it did not publish any notice in the Federal Register regarding shield supports. *Defendant's Answer* at 2. Because the UEP of classifying shield supports as extracting machinery survived implementation of the HTSUS, Customs was required to publish notice of its intention to classify shield supports under a new category that would result in the imposition of a higher duty rate. Customs' liquidation of the subject merchandise under subheading 8479.89.90, HTSUS, is therefore reversed.

### CONCLUSION

The court finds that a UEP of classifying shield supports as extracting machinery, which dates back to at least 1967, continues to apply under Heading 8430 of the HTSUS. Customs has conceded that it did not publish the requisite notice of a change in classification in the Federal Register; therefore, as a matter of law, the court finds that Customs' presumption of correctness has been overcome, and that Hemscheidt's shield supports

---

4. The statute reads:
No administrative ruling resulting in the imposition of a higher rate of duty or charge than the Secretary of the Treasury shall find to have been applicable to imported merchandise under an established and uniform practice shall be effective with respect to articles entered for consumption or withdrawn from warehouse for consumption prior to the expiration of thirty days after the date of publication in the Federal Register of notice of such ruling.... 19 U.S.C. § 1315(d) (1988).

are properly classified under subheading 8430.50.50, HTSUS, as other self-propelled extracting machinery. The court grants Hemscheidt's motion, and reverses Customs' classification of the subject merchandise. Judgment will be entered for plaintiff.

## JUDGMENT

This case having been submitted for decision, and the Court, after due deliberation, having rendered a decision herein; now, in conformity with said decision, it is hereby

**ORDERED, ADJUDGED,** and **DECREED:** that the classification of the subject merchandise by the United States Customs Service ("Customs") under subheading 8479.89.90 of the Harmonized Tariff Schedule of the United States ("HTSUS") is reversed; and it is further

**ORDERED, ADJUDGED,** and **DECREED:** that Customs shall reliquidate the subject merchandise under subheading 8430.-50.50 of the HTSUS, at a duty rate of 2.5 percent *ad valorem*. Customs shall refund all excess duties paid with interest as provided by law. Judgment is hereby entered for plaintiff.