THOMAS EQUIPMENT LTD., Plaintiff,

v.

UNITED STATES of America, Defendant.

**Slip Op. 95–29.**
**Court No. 91–12–00851.**

United States Court of
International Trade.

Feb. 28, 1995.

Leahy & Ward, Boston, MA (Stephen J. Leahy), for plaintiff.

Frank W. Hunger, Asst. Atty. Gen., Joseph I. Liebman, Atty. in Charge, Intern. Trade Field Office, Commercial Litigation Branch, Civ. Div., U.S. Dept. of Justice (Bruce N. Stratvert); Office of Assistant Chief Counsel, U.S. Customs Service (Chi S. Choy), Washington, DC, of counsel, for defendant.

### MEMORANDUM and ORDER

GOLDBERG, Judge:

This matter comes before the Court on plaintiff's motion either for judgment on the pleadings or for summary judgment. Defendant opposes plaintiff's motion. The Court exercises its jurisdiction pursuant to 28 U.S.C. § 1581(a) (1988).

### BACKGROUND

The merchandise at issue in this action consists of vehicles known as "Thomas Skid Steer Loaders." [1]  These vehicles operate at speeds ranging from 4.6 to 7.2 miles per hour and can lift 800 to 2,300 pounds. *Id.* They can utilize numerous interchangeable attachments, including: sweepers, pallet forks, angle brooms, and buckets. *Id.* Consequently, they are used in many different industries. *Id.*

In August 1973, the United States Customs Service ("Customs") issued a classification ruling which applied to Thomas Skid Steer Loaders.[2] In that ruling, Customs classified the vehicles under Item 692.40 of the Tariff Schedules of the United States ("TSUS"), with a duty rate of free. *Id.* at 3. This Item of the TSUS provided for, among other items:

> [S]elf propelled work trucks ... of the off-the-highway types used in factories, warehouses, or transportation terminals for short-distance transport, towing, or handling of articles.

Customs admits that it engaged in a uniform and established practice ("UEP") of classifying Thomas Skid Steer Loaders as work trucks under Item 692.40 of the TSUS for the next fifteen years.[3]

In or about March 1988, Customs questioned whether it should categorize certain entries of Thomas Skid Steer Loaders as work trucks under Item 692.40, TSUS.[4] In August 1990, Customs decided that Thomas Skid Steer Loaders did not belong in Item 692.40 of the TSUS because there was no clear evidence indicating that they were work trucks used in factories, warehouses, or transportation terminals. *Id.* at 2. Customs found, however, that it had engaged in a UEP of classifying the vehicles under Item 692.40, TSUS, and that it had not taken any steps to abandon its UEP before the entries

1. *Exhibit A* to *Defendant's Opposition to Plaintiff's Motion for Judgment on the Pleadings or for Summary Judgment ("Defendant's Exhibit A ")* at 1 (May 2, 1991 classification ruling regarding Thomas Skid Steer Loaders).

2. *Exhibit 1* to *Memorandum in Support of Plaintiff's Motion for Judgment on the Pleadings or for Summary Judgment* (August 20, 1973 classification ruling regarding Thomas Skid Steer Loader).

3. *Plaintiff's Statement of Material Facts as to Which There are No Genuine Issues to be Tried ("Plaintiff's Statement of Facts ")* at 2; *Defendant's Response to Plaintiff's Statement of Material Facts Not in Issue ("Defendant's Response ")* at 1.

4. *Exhibit B* to *Defendant's Opposition to Plaintiff's Motion for Judgment on the Pleadings or for Summary Judgment ("Defendant's Exhibit B ")* (August 1, 1990 classification ruling regarding Thomas Skid Steer Loaders).

in question had arrived in the United States. *Id.* at 2–3. More specifically, it had not observed the requirements of 19 U.S.C. § 1315(d), which provides in part:

> No administrative ruling resulting in the imposition of a higher rate of duty or charge than the Secretary of Treasury shall find to have been applicable to imported merchandise under an established and uniform practice shall be effective with respect to articles entered for consumption or withdrawn from warehouse for consumption prior to the expiration of thirty days after the date of publication in the Federal Register of notice of such ruling.

Customs therefore classified all entries of Thomas Skid Steer Loaders made under the TSUS as work trucks. *Defendant's Exhibit B* at 3.

On January 1, 1989, the Harmonized Tariff Schedule of the United States ("HTSUS") came into effect. Thereafter, from November 29, 1989 to April 18, 1991, the entries of Thomas Skid Steer Loaders at issue in this case were imported from Canada. *Plaintiff's Complaint* at 2; *Defendant's Answer* at 1. Customs did not classify the subject entries as work trucks under the HTSUS; rather, Customs classified them as front-end shovel loaders under subheading 8429.51.10 of the HTSUS and assessed duties ranging from 0.8% to 1.6% *ad valorem.*[5] *Plaintiff's Complaint* at 3; *Defendant's Answer* at 1. In a May 1991 classification ruling, Customs explained that it had decided to classify the merchandise as shovel loaders because the merchandise could be fitted with front-mounted buckets. *Defendant's Exhibit A* at 3–4.

After plaintiff unsuccessfully protested Customs' classification of the merchandise, plaintiff filed this action, and now moves either for judgment on the pleadings or for summary judgment. Plaintiff claims that

Customs made a finding that it had engaged in a UEP of classifying the subject merchandise as work trucks, with a duty rate of free, under the TSUS; plaintiff therefore argues that Customs cannot reclassify the merchandise as shovel loaders with a higher rate of duty under the HTSUS without first giving thirty days notice as required by 19 U.S.C. § 1315(d). In response, defendant admits that Customs engaged in a UEP of classifying the merchandise as work trucks under the TSUS. Defendant also claims, however, that the enactment of the HTSUS abolished the UEP, as well as any obligation to publish notice of Customs' decision to classify the subject merchandise under subheading 8429.51.10 of the HTSUS.

## DISCUSSION

### A. *Summary Judgment.*

■ The Court may grant a motion for summary judgment if it finds that a case lacks genuine issues of material fact, and that the moving party is entitled to judgment as a matter of law. USCIT Rule 56(d). The sole issue before the Court is whether Customs' finding of a UEP of classifying plaintiff's merchandise as work trucks under the TSUS required it to publish notice of an administrative ruling raising the rate of duty applicable to the merchandise under the HTSUS. The Court and the parties all agree that the Court may dispose of this issue of law on summary judgment.[6] In considering plaintiff's motion for summary judgment, the Court notes that Customs' classification of the subject merchandise under subheading 8429.51.10, HTSUS, is afforded a statutory presumption of correctness. 28 U.S.C. § 2639(a)(1) (1988). Plaintiff bears the burden of overcoming this presumption. *Id.*

### B. *UEPs Under the TSUS and the HTSUS.*

Congress enacted 19 U.S.C. § 1315(d) because it realized that in conducting business,

---

**5.** Pursuant to the United States—Canada Free Trade Agreement, Customs assessed a duty of 1.6% *ad valorem* for entries made in 1989; 1.2% *ad valorem* for entries made in 1990; and 0.8% *ad valorem* for entries made in 1991.

**6.** *Memorandum in Support of Plaintiff's Motion for Judgment on the Pleadings or for Summary Judgment* at 12; *Defendant's Memorandum in*

*Support of Its Opposition to Plaintiff's Motion for Judgment on the Pleadings or for Summary Judgment* at 3; *see also Hemscheidt Corp. v. United States,* 18 CIT ——, ——, 858 F.Supp. 223, 228 (1994) (*appeal docketed* Sept. 2, 1994) (the issue of whether enactment of the HTSUS abolished Customs' obligation to publish notice pursuant to 19 U.S.C. § 1315(d) presents a question of law).

importers rely upon the existence of certain UEPs engaged in by Customs. *Heraeus–Amersil, Inc. v. United States,* 4 Fed.Cir. (T) 95, 101, 795 F.2d 1575, 1582 (1986). The statute recognizes that if the Secretary of Treasury finds that a UEP exists, then notice of any changes in practice which raise the applicable rate of duty should be published in the Federal Register in order to make the changes known to all importers throughout the country. *Id.* This gives importers a reasonable amount of time in which to conclude transactions entered into under previously existing duty rates. *Atari Caribe, Inc. v. United States,* 16 CIT 588, 595, 799 F.Supp. 99, 107 (1992) (citations omitted). It also allows importers to adjust future prices to account for the increase in duties. *Id.*

■ Section 1315(d) expressly provides for one exception to the thirty day notice requirement. The statute provides that the thirty day notice requirement "shall not apply with respect to increases in rates of duty resulting from the enactment of the Harmonized Tariff Schedule of the United States to replace the Tariff Schedules of the United States." This Court has interpreted the exception to mean that the thirty day notice requirement shall not apply when the enactment of the HTSUS compels Customs to issue a ruling raising the rate of duty over that established by a UEP.[7] *See Hemscheidt,* 858 F.Supp. 223.

■ If, however, the enactment the HTSUS does not compel Customs to abandon a UEP, but instead Customs makes a substantive decision to abandon a UEP in favor of a HTSUS classification with a higher rate of duty, then Customs must give 30 days

notice of its classification ruling pursuant to 19 U.S.C. § 1315(d).[8] *Hemscheidt,* 858 F.Supp. at 228. This is because importers should be able to rely on Customs' longstanding practice of classifying merchandise under a tariff provision which Congress has reenacted without substantial change. *United States v. Bayersdorfer & Co.,* 16 Ct.Cust. 43, 46, T.D. 42, 717 (1928); *see also* Ruth F. Sturm, *Customs Law and Administration* § 52.4 at 27–28 (1993). Reenactment of a tariff provision without substantial change implies congressional approval of long-continued administrative practices engaged in under that provision. Ruth F. Sturm, *Customs Law and Administration* § 52.4 at 27 (1993); *see also United States v. Bayersdorfer & Co.,* 16 Ct.Cust. 43, 46, T.D. 42,717 (1928). This remains true even if a new tariff schedule embodies the reenacted tariff provision.

■ Thus, the Court must undertake a case-by-case analysis to determine whether enactment of the HTSUS caused Customs to abandon a UEP established under the TSUS, or whether Customs could have continued to engage in a UEP under the HTSUS, but made a substantive decision not to do so. *Hemscheidt,* 858 F.Supp. at 225–226. As discussed further below, the analysis conducted by the Court in this case indicates that Customs' abandonment of its UEP did not result from the enactment of the HTSUS; rather, it resulted from Customs' rethinking as to the proper classification of the subject merchandise.

C. *Viability of the TSUS UEP under the HTSUS.*

In conducting its analysis of whether or not the enactment of the HTSUS forced Cus-

---

7. For example, suppose that Customs found that it had engaged in a UEP of classifying a certain object under the TSUS provision for "widgets," with a duty rate of 1% *ad valorem.* Now suppose that the HTSUS were enacted without a provision for "widgets," and as a result, Customs issued a ruling classifying the item under the HTSUS provision for "gadgets," with a duty rate of 3% *ad valorem.* In such a case, 19 U.S.C. § 1315(d) would not require Customs to publish notice in the Federal Register of the ruling raising the rate of duty applicable to the item.

8. For example, suppose that Customs found that it had engaged in a UEP of classifying a certain

object under the TSUS provision for "widgets," with a duty rate of 1% *ad valorem.* Now suppose that the HTSUS contained a provision with exactly the same terms and duty rate. Moreover, assume that both the legislative history and explanatory notes for the HTSUS provision lacked any evidence indicating an intent to deviate from the UEP developed under the TSUS. If Customs were to make a substantive decision to reclassify that object under the HTSUS provision for "gadgets," with a duty rate of 3% *ad valorem,* then 19 U.S.C. § 1315(d) would require Customs to publish notice of its classification ruling 30 days before the ruling could take effect.

toms to abandon a UEP which existed under the TSUS, the Court will consider the following non-exclusive list of factors: (1) a comparison of the language of relevant TSUS and HTSUS provisions; (2) relevant explanatory notes; and (3) the U.S. International Trade Commission, *Continuity of Import and Export Trade Statistics After Implementation of the Harmonized Commodity Description and Coding System*, USITC Pub. No. 2015 (Jan. 1988) ("*ITC Conversion Report*"). *Hemscheidt*, 858 F.Supp. at 228.[9] In considering these factors, the Court will not deem any one dispositive.

### 1. *Comparative Language of TSUS and HTSUS Provisions.*

The Court will first compare the language used in the TSUS category under which Customs engaged in a UEP of classifying Thomas Skid Steer Loaders, and the HTSUS categories which, according to each of the parties, now apply to the subject merchandise.

Plaintiff claims that the UEP of classifying its merchandise under Item 692.40 of the TSUS carries over to subheading 8427.20.00 of the HTSUS. The language of these two provisions is set forth below.

**Item 692.40, TSUS:**

Fork-lift trucks, platform trucks and other self-propelled work trucks, and platform tractors; all of the foregoing of off-the-highway types used in factories, warehouses, or transportation terminals for short-distance transport, towing, or handling of articles; and parts of the foregoing trucks and tractors.

**Subheading 8427.20.00, HTSUS:**

Fork-lift trucks; other work trucks fitted with lifting or handling equipment;

.        .        .        .        .

Other self-propelled trucks.

Although the two tariff provisions do not contain identical language, they both cover "work trucks." Congress' enactment of the term "work truck" in the HTSUS provision evidences its ratification of earlier rulings interpreting the term "work truck" under the

TSUS, such as Customs' 1973 ruling relating to the subject merchandise. *See Beloit Corp.*, 18 CIT ——, ——, 843 F.Supp. 1489, 1501 (citation omitted). Indeed, the HTSUS provision may cover a broader class of work trucks than did the TSUS provision. Item 692.40 of the TSUS provided only for work trucks of the off-the-highway type used in factories, warehouses, or transportation terminals. Subheading 8427.20.00 of the HTSUS, on the other hand, refers to work trucks fitted with lifting or handling equipment, without limitation.

A comparison of the language of the TSUS provision under which the UEP existed, i.e. Item 692.40, and the HTSUS subheading advanced by Customs, i.e. subheading 8429.51.10, yields fewer similarities. The language of these two provisions is printed below.

**Item 692.40, TSUS:**

Fork-lift trucks, platform trucks and other self-propelled work trucks, and platform tractors; all of the foregoing of off-the-highway types used in factories, warehouses, or transportation terminals for short-distance transport, towing, or handling of articles; and parts of the foregoing trucks and tractors.

**Subheading 8429.51.10, HTBUS:**

Self-propelled bulldozers, angledozers, graders, levelers, scrapers, mechanical shovels, excavators, shovel loaders, tamping machines and road rollers:

.        .        .        .        .

Mechanical shovels, excavators, and shovel loaders:

Front-end shovel loaders:

Wheel type.

The HTSUS provision does not focus on multi-purpose work trucks. Instead, it focuses on vehicles which manipulate the earth or like material.

Thus, a comparison of the language of the competing TSUS and HTSUS provisions shows that subheading 8427.20.00 of the HTSUS acquired the "work truck" language

---

9. The Court notes that consideration of other factors, such as legislative history, may also aid in determining whether a UEP which existed

under the TSUS attaches to an HTSUS provision. *See Beloit Corp. v. United States*, 18 CIT ——, ——, 843 F.Supp. 1489, 1496–97 (1994).

and duty rate of free from Item 692.40 of the TSUS. This indicates that Customs could have continued to engage in its UEP of classifying the subject merchandise as work trucks after enactment of the HTSUS. Customs chose, however, to classify the merchandise as shovel loaders.

### 2. *Relevant Explanatory Notes.*

■ Preliminarily, the Court recognizes that while explanatory notes generally indicate proper interpretation of the HTSUS, they do not legally bind the United States. *Beloit Corp.*, 18 CIT ——, ——, 843 F.Supp. 1489, 1499 (citing *Lynteq, Inc. v. United States*, 10 Fed.Cir. (T) ——, ——, 976 F.2d 693, 699 (1992)). In this case, however, the Court finds that the relevant explanatory notes serve as a useful guide in determining whether the UEP which applied to the subject merchandise under the TSUS survived enactment of the HTSUS.

The explanatory notes for the classification advanced by plaintiff, i.e. subheading 8427.20.00, HTSUS, provide in part:

[T]his heading covers work trucks fitted with lifting or handling equipment. Work trucks of this description include, for example:

(A) FORK-LIFT AND OTHER ELEVATING OR STACKING TRUCKS

. . . . .

The lifting device of the above trucks is normally powered by the motive power unit of the vehicle, and is usually designed to be fitted with various special attachments (forks, jibs, buckets, grabs, etc.) according to the type of load to be handled.

. . . . .

(B) OTHER WORK TRUCKS FITTED WITH LIFTING OR HANDLING EQUIPMENT

This group includes:

. . . . .

(2) Other trucks fitted with lifting or handling equipment including those specialised [sic] for use in particular industries.

The numerous references to work trucks in the explanatory notes for subheading 8427.20.00 of the HTSUS support the conclusion that it was intended to replace Item 692.40 of the TSUS in its application to work trucks.

In contrast, the explanatory notes for the category advanced by Customs, i.e. subheading 8429.51.10, HTSUS, show that it covers a somewhat different kind of vehicle than Item 692.40, TSUS does. These explanatory notes provide, in part:

The heading covers a number of earth digging, excavating or compacting machines which are explicitly cited in the heading and which have in common the fact that they are all self-propelled.

. . . . .

The provisions of Explanatory Note 84.20 relating to self-propelled and multi function machines apply, mutatis mutandis, to the self-propelled and multi-function machines of this heading, which includes the following:

. . . . .

(F) Self-propelled shovel loaders. These are wheeled or crawler machines with a front-mounted bucket which pick up material through motion of the machine, transport and discharge it.

The explanatory notes do not explicitly provide for "Thomas Skid Steer Loaders" or "work trucks." Further, the notes show that subheading 8429.51.10 of the HTSUS covers more specialized kinds of machines, such as those which manipulate the earth.

In sum, the relevant explanatory notes evidence no intent to change the classification of the subject merchandise. Indeed, the explanatory notes for subheading 8427.20.00, HTSUS, show that the provision continues to cover work trucks fitted with lifting or handling equipment. Thus, the notes indicate that Customs could have continued to classify the merchandise as work trucks under subheading 8327.20.00, HTSUS. Customs chose, however, to classify the subject merchandise as shovel loaders.

### 3. *The 1988 ITC Conversion Report.*

■ The *ITC Conversion Report* aims to help its user to convert a known classification under the TSUS into a likely classification

under the HTSUS. *ITC Conversion Report* at 3; *TSUSA/HTSUS Cross Reference Clarification,* 53 Fed.Reg. 27,447 (July 20, 1988). The Court notes that the *ITC Conversion Report* serves only as a guide; it is not dispositive of tariff classification disputes. *Id.* In this case, however, the Court finds the *ITC Conversion Report* helpful in determining whether the UEP which applied to the merchandise under the TSUS survived the enactment of the HTSUS.

The *ITC Conversion Report* cross-references the HTSUS provision promoted by plaintiff, i.e. subheading 8427.20.00, with the general TSUS provision which Customs applied to the merchandise, i.e. Item 692.40. In contrast, the *ITC Conversion Report* cross-references the HTSUS provision advanced by Customs, i.e. subheading 8429.51.10, with an extraneous TSUS classification, i.e. Item 664.07.20, TSUS. This Item of the TSUS basically applied to wheel-type, front-end shovel loaders. Consequently, the *ITC Conversion Report* indicates that subheading 8427.20.00, HTSUS, inherited the UEP of classifying the subject merchandise under Item 692.40 of the TSUS. Customs chose, however, to classify the merchandise under a different category.

From its analysis of all of the foregoing factors, the Court finds that subheading 8427.20.00, HTSUS, is substantially the same as Item 692.40, TSUS, in its application to work trucks such as the subject merchandise. Therefore, the Court concludes that subheading 8427.20.00, HTSUS, inherited the UEP which existed with regard to the subject merchandise under Item 692.40, TSUS.

### D. *Notice.*

Having determined that Customs' undisputed UEP of classifying Thomas Skid Steer Loaders under Item 692.40 of the TSUS attached to subheading 8427.20.00 of the HTSUS, the Court turns to consider the validity of Customs' decision to liquidate the entries of the merchandise at issue in this case under subheading 8429.51.10 of the HTSUS. In May 1991, Customs issued the administrative ruling by which it raised the rate of duty applicable to the merchandise above that established by its UEP. Customs

admits that it failed to publish notice of this administrative ruling in the Federal Register. *Plaintiff's Statement of Facts* at 2; *Defendant's Response* at 2. Because Customs failed to publish notice of this administrative ruling, Customs did not comply with 19 U.S.C. § 1315(d). Consequently, Customs' liquidations of the subject merchandise under subheading 8429.51.10 of the HTSUS are rendered invalid. *See Asiatic Petroleum Corp. v. United States,* 59 CCPA 20, 22, C.A.D. 1029, 449 F.2d 1309 (1971) (if Customs makes a finding of a UEP, and it fails to give proper notice of a ruling raising the rate of duty over that established by the UEP, then liquidation pursuant to the ruling is void). Wherefore, it is hereby

**ORDERED** that plaintiff's motion for summary judgment is GRANTED. Judgment will be entered accordingly.

### *ORDER*

Court No. 91–12–00851 having come before the Court on plaintiff's motion for judgment on the pleadings or for summary judgment; and the Court, after due deliberation, having granted plaintiff's motion for summary judgment; now, in conformity with said decision, it is hereby

**ORDERED, ADJUDGED,** and **DECREED:** that classification of the entries of the subject merchandise at issue in this case by the United States Customs Service ("Customs") under subheading 8429.51.10 of the Harmonized Tariff Schedule of the United States ("HTSUS") is reversed; and it is further

**ORDERED, ADJUDGED,** and **DECREED:** that Customs shall reliquidate the entries of the subject merchandise at issue in this case under subheading 8427.20.00 of the HTSUS, at a duty rate of free, and shall refund all excess duties paid with interest as provided by law. Judgment is hereby entered for the plaintiff.