ANHYDRIDES & CHEMICALS, INC., PLAINTIFF *v.* UNITED STATES, DEFENDANT

Court No. 92–08–00580

(Dated March 7, 1996)

*Fitch, King and Caffentzis (Peter J. Fitch),* for plaintiff Anhydrides & Chemicals, Inc.
*Frank W. Hunger,* Assistant Attorney General; *Joseph I. Liebman,* Attorney-in-Charge, International Trade Field Office, Commercial Litigation Branch, Civil Division, United States Department of Justice *(Bruce N. Stratvert);* Office of the Assistant Chief Counsel, International Trade Litigation, United States Customs Service *(Chi S. Choy),* of Counsel, for defendant.

## OPINION

GOLDBERG, *Judge:* This matter is before the Court following trial *de novo.* It involves the proper tariff classification of succinic acid anhydride, a chemical added to such products as processed food, medicine, wine, and animal feed to impart a tart flavor to improve the taste of the products or mask foul flavors.

The plaintiff's product entered the United States in 1990. The United States Customs Service ("Customs") classified it as "anhydrides * * * of succinnic acid" under subheading 2917.19.27 of the Harmonized Tariff Schedules of the United States (HTSUS), and imposed a tariff of 3.7 cents per kilogram plus 16.8% *ad valorem.*[1] Plaintiff urges that the merchandise should be classified under subheading 2917.19.50, HTSUS, a residual classification which carries a tariff of 4%. The Court finds that Customs properly classified the product. The Court exercises its jurisdiction pursuant to 28 U.S.C. § 1581(a) (1988).

## I. STANDARD OF REVIEW

Customs' tariff classification decisions are presumed to be correct; the importer bears the burden of proving otherwise. 28 U.S.C. § 2639(a)(1) (1988). To determine whether the importer has overcome this presumption, the Court must consider whether Customs' classification is correct, both independently and in comparison with the importer's proposed alternative. *Jarvis Clark Co. v. United States,* 2 Fed. Cir. (T) 70, 75, 733 F.2d 873, 878, *reh'g denied,* 2 Fed. Cir. (T) 97, 739 F.2d 628 (1984).

## II. CUSTOMS' CLASSIFICATION

In considering Customs' classification, the Court begins with the plain language of the statute. Subheading 2917.19.27, HTSUS, describes a number of acids and anhydrides derived from different chemicals. The relevant portion of the subheading provides for "anhy-

---

[1] The HTSUS spells the term "succinic" as "succinnic," differently than dictionaries and other sources the Court has consulted. This difference is immaterial to interpreting the HTSUS. The Court will spell the term as "succinic" except when quoting language from subheading 2917.19.27, HTSUS.

drides * * * of succinnic acid derived in whole or in part from maleic anhydride or from cyclohexane." 2917.19.27, HTSUS.

A. *Meaning of the Term "Anhydrides * * * of Succinnic Acid":*

Before comparing plaintiff's product to the description in subheading 2917.19.27, HTSUS, it is necessary to clarify the meaning of a few disputed terms.

The Court first determines whether or not the term "anhydrides * * * of succinnic acid," as used in subheading 2917.19.27, HTSUS, names plaintiff's product. According to plaintiff's expert witness, Mr. Philip S. Rhodes, Vice President of Anhydrides & Chemicals, Inc., the only two proper names for plaintiff's product are "succinic anhydride" and "succinic acid anhydride." According to Mr. Rhodes, "anhydrides * * * of succinnic acid" is a description of the product, but it is not a proper name. Defendant's expert witness, Dr. James W. Canary, Assistant Professor of Chemistry at New York University, similarly testified that "anhydrides * * * of succinnic acid" is not the commonly accepted name for the product. However, Dr. Canary observed that the description brings only one thing to mind: plaintiff's product. Both experts agreed that an anhydride of a chemical indicates that a molecule of water has been removed from the original chemical. Both experts testified that the terms "succinic anhydride" and "succinic acid anhydride" identify succinic acid from which a molecule of water has been removed.

The Court's own review of the closeness of the three names, the identical chemical structure that they identify or describe, and the testimony of both Mr. Rhodes and Dr. Canary persuade the Court that the terms succinic anhydride, succinic acid anhydride, and anhydrides of succinnic acid are synonymous for purposes of interpreting the HTSUS. The Court finds, therefore, that the description provided in the HTSUS, "anhydrides * * * of succinnic acid," is clear and unambiguous. The Court will therefore use these terms interchangeably.

B. *Meaning of the Term "Derived":*

The term "derived" as used in subheading 2917.19.27, HTSUS, can have one of two meanings. According to the dictionary, the term "derived" means "formed or developed out of something else." *Webster's Third New International Dictionary* 608 (Unabridged, 1986). Similarly, the term "derivative" is defined as "a substance that is made from another substance." *McGraw-Hill Dictionary of Scientific and Technical Terms* 545 (5th ed. 1994). This first meaning of the term "derived" therefore implies that one substance is derived from another substance when it is made physically from the other.

According to Dr. Canary, a second definition of the term "derived" is used in the academic world and among scientists. According to this usage, a substance is derived from another when both substances possess similar chemical formulas. *See Webster's Third New International Dictionary* 608 (Unabridged, 1986) (defining "derivative" as "a chemical substance that is so related structurally to another substance as to be

theoretically derivable from it even when not so obtainable in practice"). Scientists would then place additional conditions on a process to indicate that one substance is actually made from another. Dr. Canary also testified that he believes the scientific definition is not widely used outside a laboratory or classroom. In his opinion, a production manager, for instance, would be more likely to use the term "derived" to mean that one substance is made from another.

In ascertaining the plain meaning of a particular statutory term, the Court presumes that Congress frames tariff acts using the language of commerce. *Nylos Trading Co. v. United States,* 37 CCPA 71, 73 (1949). The Court also presumes that the commercial meaning of a tariff term coincides with its common meaning, in the absence of evidence to the contrary. *United States v. C.J. Tower & Sons,* 48 CCPA 87, 89 (1961). The Court may rely upon its own understanding, and consult standard lexicographic and scientific authorities to determine the common meaning of a tariff term. *Brookside Veneers, Ltd. v. United States,* 6 Fed. Cir. (T) 121, 125, 847 F.2d 786, 789, *cert. denied,* 488 U.S. 943 (1988).

For purposes of the present case, the Court interprets the term "derived" as used in subheading 2917.19.27, HTSUS, to mean to physically make one thing from another. This accords with the way the term is typically used in commerce.

### C. *Plaintiff's Production Process:*

Both defendant's expert witness, Dr. Canary, and plaintiff's expert witness, Mr. Rhodes, gave substantially identical testimony as to the production process utilized to make plaintiff's product.

According to both Dr. Canary and Mr. Rhodes, there are various ways to make succinic acid anhydride. Both agreed that the first step in plaintiff's production process is to mix maleic anhydride, hydrogen, and a catalyst in a reaction chamber. According to Mr. Rhodes, the mixture is then stirred and cooked to make the molecules recombine to produce a crude form of succinic acid anhydride. Typically, the mixture will contain some maleic anhydride that did not chemically react to form succinic acid anhydride. If moisture is present in the reaction chamber, the mixture will also contain traces of succinic acid.

Removing these impurities can be accomplished in various ways. Dr. Canary described a purification process by which the crude succinic acid anhydride is heated, thereby converting the liquid to a gas, then cooled so that the gas recondenses into a purified liquid. Mr. Rhodes testified that their product is purified by a vacuum distillation process.

Mr. Rhodes also testified that plaintiff uses an alternative production process when the color of their product is important, such as when used in foodstuffs. In this alternative process, maleic anhydride is first dissolved in water and kept at room temperature. Succinic acid forms, which is then precipitated from the water using salt. The compound is then heated to steam out the water, thereby producing succinic acid

anhydride. The color of the anhydride is lighter under this process because it avoids heating to temperatures that discolor the mixture.

Both witnesses agreed that under both processes, maleic anhydride is the source material used to make plaintiff's product. In the first step of each production process, maleic anhydride is combined with either hydrogen, or when the second process is used, mixed with water. Using the words of subheading 2917.19.27, HTSUS, plaintiff's product is physically produced from, or derived from, maleic anhydride. The Court finds, therefore, that subheading 2917.19.27, HTSUS, describes plaintiff's product.

### D. *Plaintiff's Challenge to Subheading 2917.19.27, HTSUS:*

Plaintiff challenges Customs' classification on the grounds that it does not describe plaintiff's product because it never went through the acid form during the production process. Plaintiff is effectively arguing that the Court should interpret the term "of" in "anhydrides * * * of succinnic acid" to require that the product was actually produced from succinic acid.

Plaintiff is presenting the Court with a tortured interpretation of subheading 2917.19.27, HTSUS. The HTSUS does not impose any requirement that the succinic acid anhydride must have been succinic acid at any time during the production process. As discussed above, to fall within the scope of this subheading, the only requirement is that the "anhydrides * * * of succinnic acid" must be derived in whole or in part from maleic anhydride or from cyclohexane. The Court found such a condition because the term "derived" appears in subheading 2917.19.27, HTSUS. In contrast, the term "of" as in "anhydrides * * * of succinnic acid" does not imply the condition that the anhydride must be made from succinic acid.

The Court's statutory construction is consistent with the science of making succinic acid anhydride. The expert witnesses discussed two general methods of producing succinic acid anhydride: it can be created either by removing two hydrogen atoms and one oxygen atom from succinic acid, or by adding hydrogen atoms to maleic anhydride. The chemical structure of succinic acid anhydride is the same regardless of which method is utilized.

The HTSUS provides for succinic acid anhydride derived in whole or in part from maleic anhydride, which corresponds to the second method described by the expert witnesses. If the HTSUS required that the end product pass through succinic acid form, it would not have provided for the alternative process of deriving succinic acid anhydride directly from maleic anhydride. The Court will not impose plaintiff's additional requirement where it appears contrary to the explicit language of the HTSUS.

### III. PLAINTIFF'S PROPOSED CLASSIFICATION

The Court next considers plaintiff's proposed classification under subheading 2917.19.50, HTSUS, for "other" "polycarboxylic acids,

their anhydrides, halides, peroxides and peroxyacids; their halogenated, sulfonated, nitrated or nitrosated derivatives."

Plaintiff argues that this is the proper classification because plaintiff's product was classified previously under the Tariff Schedules of the United States (TSUS) as Tariff Item 426.04, at the rate of 4.2% *ad valorem*. The conversion reports indicate that Item 426.04 was to be converted to several HTSUS classifications. One of these classifications is the one proposed by plaintiff. Customs' selected classification, however, is not among the conversion options. *See Conversion of the Tariff Schedules of the United States Annotated into the Nomenclature Structure of the Harmonized System,* USITC Pub. No. 1400 (June 1983); *Continuity of Import and Export Trade Statistics After Implementation of the Harmonized Commodity Description and Coding System,* USITC Pub. No. 2051 (Jan. 1988). Thus, plaintiff argues it suffered a tariff increase simply because of conversion to a new tariff system, and that this contravened the instructions of the conversion report. Plaintiff supports its argument with legislative history showing that the conversion process was supposed to avoid, to the extent practicable, changes in the rates of duty on individual products. *Guidelines for Converting the Tariff Schedules of the United States to the Harmonized System (Conversion Guidelines),* 46 Fed. Reg. 47,897–98 (1981).

The Court notes that the conversion reports upon which plaintiff relies serve only as a guide; they are not dispositive of tariff classification disputes. *Thomas Equipment Ltd. v. Unites States,* 19 CIT 316, 322, 881 F. Supp. 611, 617 (1995). Also, although the conversion guidelines instruct Customs to avoid rate changes to the "extent practicable," they also direct Customs to simplify tariff rate structures and suggest modifications which would alleviate administrative burdens on the government. *Conversion Guidelines,* 46 Fed. Reg. 47,897–98.

Where an item is described by two headings, the Court is instructed to select the heading which provides the most specific description. *See* General Rules of Interpretation 3(a), HTSUS. Subheading 2917.19.27, HTSUS, which provides for succinic acid anhydride derived from maleic anhydride, more clearly describes plaintiff's product than does a subheading that provides for "other" polycarboxylic acids.

Where the language of the statute is clear and unambiguous, as is the case here, the Court will not find for an alternative classification based upon general legislative history. To do so would ignore the clear language of the HTSUS. This Court holds, therefore, that Customs properly classified plaintiff's product as "anhydrides * * * of succinic acid" under subheading 2917.19.27, HTSUS.

CONCLUSION

For the foregoing reasons, the Court rules in favor of the defendant. A separate judgment and order thereon will be entered accordingly.